was to protect Fraley, and make his stock as valuable as the defendant claimed it to be. Whatever loss or damage has resulted from a breach of this promise the plaintiff may recover against the defendant, if it has succeeded to the rights of Fraley under this assignment or otherwise; but I am persuaded that, independent thereof, and standing upon this promise alone, without a transfer of the claim of Fraley to it, the plaintiff is not entitled to recover.

Plaintiff's exceptions must therefore be overruled, and the motion for a new trial denied, and judgment directed upon the nonsuit, with costs.

Plaintiff's exceptions overruled, motion for a new trial denied, and judgment directed upon the nonsuit, with costs. All concur.

---

### In re WILEY et al.

(Supreme Court, Appellate Division, First Department. March 9, 1906.)

WILLS—CONSTRUCTION—RESIDUARY CLAUSE—LIMITATION OVER.

Besides other small gifts and a gift to his wife testator made bequests to his sister-in-law, his two sisters, two nieces, and two nephews of certain amounts, payable as soon after his decease as convenient, and annuities for 10 years after his death; directed the executors to set apart a sufficient sum in principal to pay all the annuities; provided that the executors should sell and convert into cash the real estate of which he should die possessed; provided that if any of the beneficiaries to whom he had made bequests, payable as soon after his death as convenient, or in 10 annual installments, should die before they become entitled to the whole or any part of said bequests, such part of their legacy which could not or had not been paid to them by reason of their death should be paid to their next of kin or legal representatives as soon after their deaths as might be convenient to testator's executors; and further provided that the residue of his property, and the interest which might be received from the sum set apart to pay the legacies he gave to his wife and to said sisters, nieces, and nephews, should be divided among them equally; and, in case of the death of either of them before the whole of testator's estate should be divided, he directed the residue to be divided among the survivors only, share and share alike. Held, that the title to the shares in the residuary estate vested on the death of testator in the residuary legatees, subject to a limitation over to the survivors of the share of one of them on his dying before the distribution.

Houghton, J., dissenting.

Appeal from Surrogate's Court, New Yory County.

In the matter of the judicial settlement of the account of proceedings of Ann Wiley and others, executors and executrices of George Wiley, deceased. From part of the decree relative to the residuary clause, part of the residuary legatees appeal. Reversed.

Argued before O'BRIEN, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Francis S. Williams (Clarence L. Barber, of counsel), for appellants.

Hamilton & Beckett (William H. Hamilton, of counsel), for respondent.

Warren McConihe, special guardian, for infant respondents.

CLARKE, J.   The sole point involved on this appeal is the proper
interpretation of the residuary clause of testator's will.   George Wiley
died October 15, 1902, leaving a will dated June 13, 1899, and a codi-
cil thereto dated July 5, 1901.   His estate, consisting of both real and
personal property, amounted to about $350,000.   He left a widow, no
children, and collateral relatives.   After providing for his debts,
funeral and burial expenses, a specific devise of his house with a gift
of $5,000 to his wife, testator made gifts by the use of the same lan-
guage, in separate clauses, of pecuniary legacies and annuities in favor
of a sister-in-law, his two sisters, two nieces, and two nephews, such
gifts being of specified amounts, "payable as soon after my decease as
may be convenient, and the further sum of [specifying] dollars per
year for the period of ten years after my decease."   A like annuity
was given to one George Gibson.   The sums thus given to these lega-
tees, outside of their annuities, aggregate $15,000, and the annuities
themselves figured for the 10 years aggregated $43,500.   After making
several further pecuniary gifts, aggregating $10,000, the will in the
twenty-second clause directs the executors "to set apart out of my estate
a sum sufficient in principal to pay all the annuities that I have here-
tofore bequeathed in this my will," and in the twenty-third clause directs
and empowers the executors "to sell any and all real estate of which I
may die possessed [except the house given to his wife], and to convert
the same into cash or mortgages."   By the twenty-fifth clause of the
will as executed he provided that, if any of the annuitants should die,
the amounts of said annuities should be paid to their next of kin or
legal representatives during the time limited; but, apparently having
been advised that this provision was illegal, as suspending the absolute
ownership for more than two lives, by his codicil he revoked said
twenty-fifth clause, and provided:

"In case any of the beneficiaries to whom I have bequeathed any sum in
this my will, either payable as soon after my death as may be convenient.
or payable to them in ten annual installments, shall die before they become
entitled to the whole or any part of the said bequests given to them under
my said will, then I direct that such part of the legacy bequeathed to them
herein which cannot or has not been paid to them, by reason of their death.
shall be paid to their next of kin or legal representatives as soon after their
respective deaths as may be convenient to my executrices and executors, it
being my intention that the said sum given to the various legatees and pay-
able in ten annual installments shall not be held in trust for a period longer
than the lives of the said legatees respectively."

The twenty-sixth clause is as follows:

"All the rest, residue and remainder of my property and the interest which
may be received from the sums set apart to pay the legacies hereinbefore
devised, I give, devise and bequeath to my beloved wife, Ann Wiley, my sisters
Mary Wiley and Elizabeth Wiley Gibson, my nieces Minnie Gibson and Sarah
Roxborrow and my nephews Charles Roxborrow and Frank Assmus, to be
divided among them share and share alike, and in case of the death of either
my beloved wife, my sisters, my nieces or nephews before the whole of my
estate shall be divided, then I direct the said residuary to be divided among
the survivors only share and share alike."

It is conceded that when the testator wrote "Roxborrow" he intend-
ed "Roxbury."   All of these residuary legatees were alive at the date
of the death of the testator, October 15, 1902.   One of them, Charles

W. Roxbury, was killed on July 11, 1903. At the time of said Roxbury's death, no part of the residuary estate had been divided by the executors among the residuary legatees. Roxbury left, surviving him, a widow and four infant children. The executors when they came to make a division and distribution of the residuary estate divided it between the six remaining legatees. The learned surrogate has determined that:

"Charles W. Roxbury, having outlived the testator, became upon the death of the latter immediately entitled to an indefeasible vested one-seventh interest in such first part of the residuary estate and its proportional share of the net income of such estate from the date of the death of the testator, together with one-seventh of any interest that accrued before his death from the sums required to be set apart to pay the annuities. This part of decedent's estate, which represents all that Charles W. Roxbury is entitled to under the residuary clause of the will, passed upon his death to his administratrix, and she is now entitled to receive the same."

Three of the six surviving residuary legatees appeal from so much of the decree as puts into effect the surrogate's interpretation of the clause in controversy.

In Williams v. Jones, 166 N. Y., at page 532, 60 N. E., at page 242, the court said:

"The intention of the testatrix must be our absolute guide in construing her will. Such is the mandate of the statute, and that principle is so firmly established by the decisions of this and other courts as to render any citation of authorities needless."

Examining the will at bar, we find the childless testator intent upon caring for his wife, his two sisters, his sister-in-law, two nephews, and two nieces; for we may dismiss the specific legacies for small amounts from this consideration. To his wife he gave absolutely his house and its effects and $5,000. To the six others, who were the object of his special care, he gave various sums outright. To these six he also gave annuities for 10 years after his decease. He then provided that, in case of the death of any of the beneficiaries to whom he had bequeathed any sum in his will before they had become entitled to the whole or any part of the said bequests, such part of the legacy bequeathed should be paid to their next of kin or legal representatives as soon after their respective deaths as may be convenient. Having by codicil expressly revoked the twenty-fifth clause of the will, which had attempted to continue the annuities of the next of kin or legal representatives of the annuitants in case of their death before the expiration of the term limited, by the provision last cited, making the principal vest in the next of kin immediately on the death of the annuitant, he specifically in said codicil ratified and confirmed his said will in each and every particular except as modified by the codicil. He therefore clearly had in mind, so far as the specific bequest and the annuities were concerned, the possibility of the death of said beneficiaries both before his own decease and also thereafter and before enjoyment, and as to such specific legacies and annuities provided that they should not lapse, but should pass to the next of kin. But when it came to the disposition of the bulk of his estate (the residuum), "all the rest, residue, and remainder of my property and the interest which may be received for the sums set apart to pay the legacies," his pur-

pose was quite different, and was expressed in language so clear and apt as to leave, as it seems to me, no room for argument as to its intent. This estate, he intended his, wife and the six relatives named to share and enjoy. He knew them; he was concerned about them; these were the chosen objects of his bounty. For their children, born or unborn, or more remote kin, he had no care; and, in express terms, he provided that, if any of them should die before distribution, then the residuary should be divided among the survivors only, share and share alike. It is quite true that, if the residuary clause had stopped in the middle, there would have been a complete and absolute gift, title to the appropriate share in the residue would have vested at the time of the death of the testator, no matter how much time might have elapsed before distribution, and would have been transmitted to the next of kin of any residuary legatee dying before such distribution. But the said clause did not stop in the middle, but, following a comma, it went on:

"And· in case of the death of either my beloved wife, my sisters, my nieces or nephews before the whole of my estate shall be divided, then I direct the said residuary to be divided among the survivors only share and share alike."

We are to interpret the will of the testator, not to make a will for him. We are to find his intent from the language he used. The last expression of his desire as to the distribution of the greater part of his estate was that it should go to the survivors only of the carefully enumerated objects of his special care when the time for distribution came. We have no right to erase those words from his will.

There is no legal objection to this scheme of the testator. There was by the will an absolute conversion of the real estate into personalty as of the time of the testator's death, and the several distributees took their interests as money, and not as land. The title to the shares vested upon the death of the testator in the residuary legatees, subject to a limitation over to the survivors in case of death before the period of distribution.

In Robert v. Corning, 89 N. Y. 225, the court said:

"The postponement of the distribution, which was contemplated, was for the convenience of the estate, to enable the executors advantageously to convert the property. * * * The limitation over to the issue of any· child dying before the distribution was the limitation of a future contingent estate to such issue."

In the will at bar, a· conversion of the real estate into cash and mortgages was required. The executors were given full discretion "to determine whether the said property shall be sold at public or private sale, for all cash, or part cash, or part mortgages." The several bequests of specific amounts were all made payable at the convenience of the executors. These provisions indicate a knowledge on the part of the testator that the settlement of this estate would require time, and that he intended such a deliberate settlement as should secure the best returns from the property sold. These provisions strengthen the conclusion I have reached, and lend great force to the words, "in case of the·death * * * before the whole of my estate shall be divided." It is settled beyond question that where there is a devise or bequest to one person in terms which would pass the fee or an abosulte estate, if

there were no words of limitation, and there is a subsequent provision giving the same estate to another upon the happening of a contingency, the devise or bequest over will take effect.

In Norris v. Beyea, 13 N. Y. 273, it was held that:

"There is in truth no repugnancy in a general bequest or devise to one person, in language which would ordinarily convey the whole estate and a subsequent provision that upon a contingent event the estate thus given should be divested, and go over to another person. The latter clause in such cases limits and controls the former, and, when they are read together, it is apparent that the general terms which ordinarily convey the whole property are to be understood in a qualified, and not an absolute, sense. * * * So familiar is the doctrine that a limitation may be ingrafted upon a devise in fee that it is that circumstance which forms the distinction between remainders and executory devises."

In Tyson v. Blake, 22 N. Y. 558, it was said:

"A general bequest of personal estate, like a fee in lands, can be subjected to a limitation over on a condition which is not too remote. If the direction is that it shall go to another beneficiary on a contingency which must happen at the death of the first taker, the limitation is within the rules of law, and will be sustained."

In Oxley v. Lane, 35 N. Y. 340, the will read:

"I will, order, devise and bequeath that if either of my said sons or daughters should die without issue before the final distribution of my estate at the end of twenty-five years after my decease as aforesaid, that the share of the party or parties so deceased shall be shared equally among all my other children and share alike."

The court said:

"It qualifies the absolute title and estate previously given to such deceased child or grandchildren by a conditional limitation in favor of all the children of the testator then surviving. * * * This subsequent limitation over is not repugnant to the prior devises and bequests, although they are in language denoting an absolute gift of the whole estate in fee, and it will be sustained as a valid executory gift. * * *"

It is hardly necessary to cite the numerous cases supporting executory devises and conditional limitations. The rule has not been changed by later cases. "The appellant's counsel invokes the rule of construction that where there is a bequest to one person absolutely, and, in case of his death without issue to another, the contingency referred to is a death in the lifetime of the testator. But this rule has only a limited operation, and cannot be extended to a case where a point of time is mentioned other than the death of the testator to which the contingency can be referred, or to a case where a life estate intervenes, or where the context of the will contains language evincing a contrary intent. Vanderzee v. Slingerland, 103 N. Y. 47, 8 N. E. 247, 57 Am. Rep. 701; Matter of N. Y. L. & W. R. Co., 105 N. Y. 89, 11 N. E. 192, 59 Am. Rep. 478; Fowler v. Ingersoll, 127 N. Y. 472, 28 N. E. 471; Mead v. Maben, 131 N. Y. 255, 30 N. E. 98; Mullarky v. Sullivan, 136 N. Y. 227, 32 N. E. 762;" Matter of Denton, 137 N. Y. 428, 33 N. E. 482. "Where, after a devise and bequest in language denoting an absolute gift of a whole estate in fee, there is a subsequent limitation over in the event of the first devisee dying under age and without issue, the gifts are not repugnant to each other, and the latter is a valid executory gift." Williams v. Jones, 166 N. Y. 522, 66 N. E. 240.

Mr. Roxbury having died before the period of distribution arrived, the conditional limitation over took effect, and his administratrix acquired no right to the share of the residuary estate bequeathed to him. The right to one-seventh of the residuary estate, which had vested upon the death of the testator, was devested by the happening of the contingency provided for.

So much of the decree of the surrogate as is appealed from must be reversed, with costs to the appellants, payable out of the estate, and the proceeding remitted to the surrogate for action, in accordance with the views herein expressed.

O'BRIEN, P. J., and INGRAHAM and McLAUGHLIN, JJ., concur.

HOUGHTON, J. (dissenting). Charles W. Roxbury having survived the testator, I think he had a vested interest in such of the residuary estate as existed at the time of his own death, and that the decree of the surrogate was right, and should be affirmed. The intention of the testator seems quite plain. After the payment from his estate of the specific legacies which he had given, and taking out the provision for his monument, he must be presumed to have realized that a large residuum, consisting of more than half of his estate, would be left. The annuities or annual payments provided were not to be made from income, for they were expressly stated by the testator in his codicil to be legacies payable in 10 annual installments. It was therefore incumbent upon the executors to set apart $43,500 to meet these annual payments of $4,350 as they fell due each year for a period of 10 years. This sum could not be permanently invested, because it was necessary to pay out one-tenth part of it annually. The testator undoubtedly assumed that his executors might be able, in the prudent management of the estate, to realize some income from it. A small rate of interest could be had by depositing it in some trust company, or like institution, and it would be their duty so to do. The amount of interest which might be realized from this fund could not be finally determined until the period of 10 years had elapsed. Nor could the executors finally account until the end of that time, unless all those whose legacies were payable in 10 annual installments should sooner die, which it is not to be presumed the testator contemplated. The twenty-sixth clause begins with the words, "All the rest, residue, and remainder of my property," which is quite comprehensive enough to take in all property not otherwise disposed of. But the testator desired to specify particularly that there was another residue which might accrue after his death, to wit, the interest which might be received on the $43,500, and so he uses the words, "and the interest which may be received from the sums set apart to pay the legacies hereinbefore devised"; meaning, of course, the legacies, which were payable in 10 annual installments. This was an artificial residuum, as distinguished from the general residue of his estate, and it seems to me that he had this artificial residuum only in mind, and when he provided that, in case of the death of any of his named residuary legatees "before the whole of my estate shall be divided, then I direct the said residuary to be

divided among the survivors only, share and share alike." The words last quoted are those which raise the ambiguity with respect to the residuary clause. By apt and comprehensive words previously used, the testator gave all the remainder of his estate to named residuary legatees, share and share alike. This absolute gift should not be cut down to one dependent upon survivorship to a time when the estate should be finally settled, unless the language used compels such construction. The ambiguous language can well lay hold of, and apply to, the artificial residuum arising from interest on the fund held to pay the installment legacies, and I think it should be confined to that, and not be held to apply to the general residuary estate; thus avoiding repugnancy, and the cutting down of the superior estate previously given. Nor is it doing any violence to the language so to do. The words "before the whole of my estate shall be divided" imply that a division of a part, to wit, the general residuum, had been previously made. The words "the said residuary" may well be said to apply in the mind of the testator to something other than all the "rest, residue, and remainder" of his estate, and to apply to the uncertain and comparatively small sum of money which should be accumulated from the moneys held to pay the installment legacies; which amount, insignificant in comparison with the general residue of the estate, he desired should be distributed among those residuary legatees who should be living at the time the amount was finally ascertained and the last and final accounting had. This view is strengthened by reference to the body of the will. The testator had no children, but he did have a wife. He gave her the house and its furnishings and $5,000 only in money, but no annuity or legacy payable in installments. He was not as liberal with her as he was with his sister Mary, for he gave her $5,000 and $1,000 a year for 10 years. The testator must have known that estates are liable to be involved in litigation, and that a final accounting by executors and a distribution of funds is uncertain in time, and may be long postponed. Strictly speaking, the whole of the estate, under the provisions of the will, could not be divided until 10 years had elapsed. To my mind it seems to be doing great violence to the apparent intention of the testator to say that he meant that his wife, for whom he had made so meager a provision, should have nothing, during a possibly prolonged administration of the estate, to maintain herself and the home he had devised to her, and no right to any part of his residuary estate, unless she survived a final division and distribution by his executors. Manifestly, he was also solicitous for the welfare of his sisters and those of his nephews and nieces who were mentioned in his will. He could not have intended that, although they survived him, their right to any part of his estate should be postponed to any such indefinite and possibly distant period as the time when "the whole of my estate shall be divided."

The law favors the vesting of estates, and limitations over and vesting subject to be devested and postponing enjoyment of property will not be imputed to a testator if it can be avoided. It is only where the testator has unequivocally expressed his intention to create these artificial estates that the courts will adjudge them to exist. It quite frequently happens that authorities are of little aid in construing a will,

but it would appear that the principles laid down in Manice v. Manice, 43 N. Y. 303, and Shangle v. Hallock, 6 App. Div. 55, 39 N. Y. Supp. 619, were quite applicable to the language found in the will under consideration.

The interpretation put upon the will by the prevailing opinion seems to me at variance, not only with the intention of the testator, but with the language which he used, and I therefore dissent from a reversal of the decree, and vote for its affirmance.

