S. Samuel Di Falco, S.
This is a final accounting proceeding in which the executor has requested a construction of the will in order to provide for distribution of certain after-acquired property.
Decedent died in 1945 without issue, survived by his wife Viviane. His will was admitted to probate in this court. The widow died on April 20, 1968. The assets of the decedent, as originally known were administered by the executor, and prior to 1950 were fully distributed upon an informal account. More than 20 years later certain developments brought into this estate the additional sum of $114,680.37. This money represented a share of a remainder of a testamentary trust established by the decedent’s uncle. Pursuant to a decree of this court the share passed to decedent as an intestate distributee of his uncle. That decree has been affirmed by the Appellate Division (Matter of Van Wezel, 34 AD2d 615). The property actually came into the possession of the estate representative in 1971.
The question of distribution of this addition to the estate arises because of the wording of the will and the fact that although decedent’s widow survived him and the original distribution of the assets of the estate, she died prior to the receipt of this additional property. Decedent’s will is outlined as follows: In paragraph Fourth and Sixth he bequeathed a total of $250,000 to his wife if she survived him; in paragraph Fifth he gave the sum of $80,000 to Alice Guth (now Alice Gruger) if she survived him; in paragraph Seventh decedent gave $5,000 to each of six persons and $10,000 to the person named as executor "should my said wife survive me.” In paragraph Eighth decedent bequeathed his residuary estate to his wife "should my said wife survive me.” In paragraph Ninth decedent provided that if his wife should die before him, or if they both perished in a common disaster, the provisions of paragraph Fourth to Eighth should not apply, and in that event he gave the sum of $125,000 to Alice Guth if she survived him, and, he directed that the balance of his *666 property, or all if she did not survive him, should be divided into "as many equal parts as there shall remain surviving me the persons named below”. There followed the names of the seven persons referred to hereinabove who were given general legacies in paragraph Seventh.
Paragraph Tenth says that the gifts and bequests specified in the will "are subject to the following qualifications so far as the same may be applied without affecting the validity of this will or of the clauses thereof to which such qualifications refer” (italics added).
Subdivisions (a) and (c) of paragraph Tenth are not material. Subdivisión (c) reads: "All of the bequests and devises of this will are intended to be paid over only to such persons whom I name as the legatees or devisees thereof as shall survive me; for which reason it is my desire and intention, in so far as the law will permit it to be exercised without invalidating shall die before actual distribution to him or to her of the bequest or devise herein allotted to such beneficiary, the legatee or devisee so dying shall not be regarded as surviving me; and to accomplish this purpose, I direct that my executor, notwithstanding the apparently conflicting use of the word 'absolutely’ in connection with each bequest or devise, shall, so far as he lawfully may, hold all the bequests and devises in trust for the named beneficiary (except such portion thereof as I may have specifically directed to be distributed earlier) to the extent necessary to pay over the same to each such beneficiary absolutely when the legacy or devise of such beneficiary is ready for distribution, if the named legatee or devisee shall then be living, but if the named legatee or devisee shall, though living beyond me, have died before distribution, my executor shall pay over the same in such manner as if the legatee or devisee had died before me. The provisions of this subdivision shall apply to each of the paragraphs Fourth to Ninth of this will, inclusive; but my executor shall be at liberty to disregard this subdivision in executing my will if he shall be advised that my general purposes will be thereby defeated” (italics added).
The court is asked to construe subdivision (c) of paragraph Tenth in order to determine whether the death of decedent’s widow, the residuary beneficiary, prior to the receipt and actual distribution of the after-acquired property, deprives her estate of the right to these funds and substitutes the surviving legatees named in paragraph Ninth. Stated in a different *667 manner, the issue is whether the decedent’s will requires survivorship to the point of actual distribution of each and every item of property.
It is clear from a reading of the entire will that decedent intended that the death of a beneficiary before actual distribution of the bequest or devise would work a forfeiture of the gift to that person, and would substitute others. Obviously he was thinking in terms of normal and regular distribution of estate assets. The decedent qualified this plan, however, by providing that it is to be effective only insofar as the law permits it to be exercised and only insofar as it woulcL-aet invalidate any part of the will. He further limited this scheme by giving to his executor the discretionary power to disregard subdivision (c) of paragraph Tenth if the general purposes of his will would be defeated. All of these qualifications manifest some doubt of the legal validity of the conditions under all possible circumstances and eventualities.
We bear in mind that this decedent died in 1945, at which time the absolute ownership of personal property could not be suspended by any limitation or condition for a longer period than during the continuance of two lives in being at his death (Personal Property Law, § 11). As the Law Revision Commission pointed out in its study in connection with amendments in 1960, difficulty arose under the prior statute (and would still arise under the new statute) whenever a gift is made contingent upon completion of certain administrative steps, such as probate of a will, payment of debts or settlement of an estate, because it is not usually possible to relate such an event to any particular life in being. (Report Recommendations & Studies, 1960; NY Legis Doc, 1960, No. 65, p 343.) As a result of this study and upon recommendation of the Law Revision Commission, a statutory rule of construction now permits the court to presume that the testator intended such a contingency to occur within the statutory period (EPTL 9-1.3). When this decedent drew his will, and when he died, no such statutory presumption existed.
A direction for suspending absolute ownership of property for a fixed period of time would violate the statute as it existed when decedent died (Matter of Wiley, 188 NY 579). However, the courts, invoking the constructional preference for validity which was so well established in New York, endeavored to construe administrative provisions in such a way as to conform the will to the Statute of Perpetuities even *668 prior to the enactment of the rule of construction now in EPTL 9-1.3. Hence, a direction that only those of the named beneficiaries could share who survived until actual distribution of the subject of their legacies, was construed to mean a distribution in the normal period for the administration of an estate as required by statute. (Matter of Powers, 98 NYS2d 457, 458, affd 278 App Div 638; Matter of Herrmann, 193 Misc 466, 471; Matter of Chatfield, 194 Misc 197; Restatement, Property, § 374, comment f; see 5 Powell, Real Property, par 764, subd [5], pp 566-567.) That kind of direction was not regarded as suspending absolute ownership for any period at all, in the practical sense of the word. As stated by Surrogate Collins in Matter of Herrmann (supra) (p 471):
"The duty to collect the assets of the testator and to pay debts, claims and expenses before making distribution was imposed upon the executors by law and not by any explicit directions of the testator. The mandate to withhold payment of legacies for a period of seven months from the issuance of letters testamentary is laid upon the executors by statute (Surrogate’s Court Act, § 218). There is nothing in the will itself which prescribes any period of time for the making of distribution.”
In the case now before the court, the estate was regularly administered, the beneficiaries survived, and complete distribution was made of the then known assets. The estate administration was considered to have been brought to a close. If the executor had known that the decedent had a vested interest in the remainder of a then continuing trust, the remainder interest could have been assigned by the executor to the person entitled to the residuary estate. Proper administration would have required that course of action, if the remainder interest were known to exist. However, a judicial construction of the trust instrument was required to determine and define the various interests. The reason was that the trust instrument had provided a share for the decedent if he survived the trust term, with alternative gifts to others, but it came to pass that all of the named beneficiaries died before termination of the trust, resulting in a distribution to the intestate distributees of the creator of the trust. Decedent was a distributee.
The decedent’s widow actually survived the termination of that trust, which occurred on January 9, 1967, the date of death of the life beneficiary. While the date of death of decedent’s widow is not stated in the pleadings, stipulation or *669 affidavit, her executors state without contradiction that it occurred on April 20, 1968, more than a year after the trust ended. The decree construing the trust instrument was dated June 27, 1969, but the appeal further delayed distribution of the shares so that the funds were collected by the executor in installments between June 7, 1971 and November 17, 1971. Of the seven alternate residuary legatees, three cannot be located, and it is not known whether they are living or dead. One is the accounting executor, who died during the course of this proceeding. Three are still alive and argue for payment of the balance of the fund to them.
Thus a period of nearly five years has elapsed between the time that the trust ended and the executor received the last of the assets. More than 25 years have elapsed since the decedent’s death. Under the argument of the living alternate beneficiaries, even the executor who collected the property would not be entitled to a share because he failed to outlive the present litigation. Such a long postponement of vesting-could hardly be accommodated within the rule that suspending absolute ownership during the normal period of administration is not really a violation of the statute.
If this court were to construe the terms of this will as requiring survival for an additional period beyond that required by law, or until actual receipt and distribution of each and every item of property, whenever that might occur, such a conditional limitation would suspend the absolute ownership of personal property during a period not terminable on lives, and would seem to be a clear violation of the statute.
In Matter of Morrison (173 Misc 503), Surrogate Foley ruled invalid a trust provision which directed continuance of the trust until existing business agreements had been fulfilled and thereafter at the discretion of the trustees. The trust remainder was to be distributed among those named beneficiaries living at the time of liquidation of the business which was the subject matter of the trust. The Surrogate held that the term of the trust was not measured by lives in being, could extend beyond the lives of all income beneficiaries and resulted in a violation of the statute. So, too, in Matter of Connor (37 Misc 2d 363, 365), this court decided that a direction to continue a trust until the enterprises and business were sold or liquidated and to distribute the principal among the then surviving legatees resulted in a trust term "not measured by lives in being at the time of her death but by an *670 indefinite or undetermined event, namely, the sale or liquidation of businesses or enterprises and it is therefore invalid under the Statute against Perpetuities.”
Matter of Wiley (188 NY 579, supra, revg 111 App Div 590 on dissenting opn of Houghton, J.), and Henderson v Henderson (113 NY 1), both avoided invalidity by adopting a construction that would be valid. The latter case (p 9) involved a direction to the executor to divide the estate equally among testator’s children " 'living at the time of making such partition and division, and the child or children of such of my children as may then be dead, leaving issue.’ ” The executor was to make division as soon as practicable, without sacrifice of values, but could not be compelled to make division until the lapse of five years after probate. The direction to divide among those " 'living at the time of making such partition and division’ ” was said by the court (p 14) to introduce "the difficulty in the case, because it is claimed that its effect might be to prevent the absolute vesting of the share in the issue of a deceased child at the time of the parent’s death.” Seeking to sustain the testator’s dominant purpose of equal division among the children or their issue, the court severed what it called "a void ulterior, contingent limitation,” and construed the will as intending to vest shares absolutely upon a child’s death at the latest. That decision plainly recognized the invalidity of a direction to suspend ownership until partition or division.
In Matter of Wiley (111 App Div 590, 592, supra), the Appellate Division reversed the Surrogate and held that a residuary legatee who survived the testator but died before payment of legacies had lost his interest in the estate by virtue of a provision that in the event of the death of any residuary legatee " 'before the whole of my estate shall be divided’ ” the residue should be divided among the survivors. The dissenting Justice reached a different conclusion based upon his reading of the will. The Court of Appeals reversed the determination on the dissenting opinion below, but it said (188 NY 579, 580): "We may add that if the construction of the residuary clause adopted by the majority of the Appellate Division were accepted, a question would arise as to the validity of the conditional limitation therein contained as suspending the absolute ownership of personal property and the vesting of real estate during a period not terminable on lives.” (See, also, Gifts Over on Death Before Distribution *671 Under New York Rule Against Perpetuities, 50 Col L Rev 225, 229 and cases cited.)
It is thus clear that under the law applicable to the will of this testator, a direction to suspend absolute ownership until actual distribution, whenever that occurred in fact, would violate the Statute of Perpetuities. The court endeavors to read a will in such a way that its provisions will not violate the statutes or policy of the State. The provisions of the Tenth paragraph of this will can be validated only by construing the will as meaning that it required survivorship only during the normal and regular administration of an estate.
Such a construction is more easily reached in this case because this testator has recognized that there are limits to which he could not stretch, the requirement of survival, has directed that it apply only "insofar as the law will permit it to be exercised without invalidating the foregoing provisions,” and has given his executor authority to disregard the condition "if he shall be advised that my general purpose will be thereby defeated.”
Moreover, if the court were to consider the wife as not having survived decedent according to subdivision (c) of paragraph Tenth, then subdivision (c) of paragraph Tenth requires that distribution be made "as if the legatee or devisee had died before [decedent].” This then would bring paragraph Ninth into play. Paragraph Ninth provides that if decedent’s wife died before him then paragraphs Fourth to Eighth do not apply. The legacies under paragraphs Fourth to Eighth were paid out many years ago. If the court were to consider the wife as having survived decedent with regard to the initial distribution, so as to make paragraphs Fourth to Eighth effective, but not as having survived decedent with regard to the distribution of this particular property so as to make paragraphs Fourth to Eighth inapplicable, we would have a contradiction in the terms of the will. We avoid it by reading the will as expressing the intent to vest the whole residuary estate, including any after-acquired property, in the wife if she survived the time for distribution of the then known assets of the estate. The court so construes the will. The net residue on hand is payable to the estate of the widow.
The request of the court to fix an amount as reasonable compensation for the attorneys for the estate is reserved for determination upon submission of the decree. The attorneys are directed to submit an affidavit detailing the services *672 performed. Submit decree on notice construing the will and judicially settling the account.