HERMANN H. CAMMANN et al., as Executors and Trustees under the Will of EDMUND S. BAILEY, Deceased, Plaintiffs, *v.* THEODORUS BAILEY et al., Respondents, and SUSANNAH G. BAILEY et al., Appellants, Impleaded with Others.

Will — rules for construction — provisions of will examined, and held to be testator's intention to make vested gifts to a son, although postponing time when he should obtain possession.

1. Rules for the construction of wills are for the purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction.

2. Testator, by his will, after making certain bequests, directed that out of the residue a fixed sum should be set apart for the bene-

fit of his younger son, subject to the provisions thereof as to the income and principal of his residuary estate. He further directed that from such income a certain sum should be paid to his wife yearly, the income of the fixed sum mentioned to be applied to the use of such younger son and the balance divided into as many parts as the testator should leave children or descendants of children, and applied to their use until the death of his wife. Upon the happening of that event he directed that the residuary estate should be divided into as many parts as he should leave children or descendants of children, *per stirpes*, and applied to their use, in the case of the sons, until they should arrive at the age of thirty years, when their shares were to be paid to them. The younger son died at the age of twenty-three, during the lifetime of the widow, leaving a will but no descendants. *Held*, that the controlling date is the date of the death of the testator, and that his intention was to make vested gifts to such son, subject to the provisions for the widow, postponing the time when the son should have possession, and that such vested interests passed under the will of the son.

*Cammann* v. *Bailey*, 156 App. Div. 87, reversed.

(Argued November 19, 1913; decided December 16, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 23, 1913, which reversed an interlocutory judgment of Special Term construing the will of Edmund S. Bailey, deceased.

The facts, so far as material, and the questions certified are stated in the opinion.

*Bronson Winthrop* and *Albert W. Putnam* for Farmers' Loan and Trust Company, as executors of Edmund S. Bailey, deceased, et al., appellants. The direction to pay, during the widow's life to Edmund Smith Bailey the income earned by $20,000 gave to Edmund Smith Bailey a vested right in such income. (*Roosa* v. *Harrington*, 171 N. Y. 341; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Weinstein* v. *Weber*, 178 N. Y. 94; 1 Williams on Executors [10th ed.], 944; *Montanye* v. *Montanye*, 29 App. Div. 377; *Matter of Hafner*, 45 App. Div. 549; *Kelly* v. *Casey*, 62

Hun, 467; *Matter of Viele,* 35 App. Div. 211; *Matter of Seebeck,* 140 N. Y. 241.) One of the shares of income was set apart for the benefit of Edmund Smith Bailey and the direction to pay to him during the widow's life the income of that share vests in him a vested right in that income. (*Matter of Seebeck,* 140 N. Y. 241; *Matter of Brown,* 154 N. Y. 313; *Goebel* v. *Wolf,* 113 N. Y. 405; *Matter of Tienken,* 131 N. Y. 341; *Matter of Tompkins,* 154 N. Y. 634; *Livingston* v. *Greene,* 52 N. Y. 118; *Moore* v. *Lyons,* 25 Wend. 119; *Bowditch* v. *Ayrault,* 138 N. Y. 222; *Staples* v. *Mead,* 152 App. Div. 745; *Stringer* v. *Young,* 191 N. Y. 157.) There is no warrant in the will for the giving to the other children on the death of Edmund the share of income set apart for him. (*Mills* v. *Husson,* 140 N. Y. 99; *Matter of Seebeck,* 140 N. Y. 241; *Staples* v. *Mead,* 152 App. Div. 745; *Steinway* v. *Steinway,* 163 N. Y. 183; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86.) If the gift of income to Edmund Smith Bailey failed on his death, then this share of income is undisposed of and goes to the persons presumptively entitled to the next eventual estate. (*Matter of Brown,* 154 N. Y. 313; *Staples* v. *Mead,* 152 App. Div. 743; *Matter of Tompkins,* 154 N. Y. 634; *Delafield* v. *Shipman,* 103 N. Y. 463.) The principal of the fund of $20,000 is a present gift to Edmund Smith Bailey and vested in him on the testator's death, and is payable to his representatives on the widow's death. (*Roosa* v. *Harrington,* 171 N. Y. 341; *Vanderpoel* v. *Loew,* 112 N. Y. 167; *Weinstein* v. *Weber,* 178 N. Y. 94.) Edmund Smith Bailey took upon the testator's death a vested interest in one of the parts, although possession was postponed until after the widow's death and after he reached the age of thirty years. (*Robinson* v. *Martin,* 200 N. Y. 159; *Goebel* v. *Wolf,* 113 N. Y. 405; *Canfield* v. *Fallon,* 43 App. Div. 561; *Steinway* v. *Steinway,* 163 N. Y. 183; *Vanderpoel* v. *Loew,* 112 N. Y. 167; *Roosa* v. *Harrington,* 171 N. Y. 341; *Mat-*

*ter of Brown*, 154 N. Y. 313; *Matter of Young*, 145 N. Y. 535; *Matter of Tienken*, 131 N. Y. 391; *Matter of Seebeck*, 140 N. Y. 241; *Bowditch v. Ayrault*, 138 N. Y. 222.)

*Henry W. Jessup* and *Augustus S. Mapes* for Susannah G. Bailey, appellant.

*Henry H. Man* for plaintiffs, respondents.

*Charles H. Beckett* for defendants, respondents. The direction that " upon " Edmund Smith Bailey's " attaining the age of thirty years * * * the principal of the trust share held for him * * * shall after the death of my wife be paid over, transferred or conveyed to him " did not and could not create any vested interest until after the death of the testator's wife as well as upon Edmund Smith Bailey's attaining thirty. A gift when or provided a child survives its mother-in-law and also reaches the age of thirty is contingent and future, not present and vested during the mother-in-law's life and also prior to the child's attaining twenty-four. (*Lewisohn v. Henry*, 179 N. Y. 352; *Schlereth v. Schlereth*, 173 N. Y. 444; *Herzog v. T. G. & T. Co.*, 177 N. Y. 86; *Delafield v. Shipman*, 103 N. Y. 463; *Shipman v. Rollins*, 98 N. Y. 311; *Matter of Crane*, 164 N. Y. 71; *Salter v. Drowne*, 205 N. Y. 204; 141 App. Div. 352; *Brooklyn Trust Co. v. Phillips*, 134 App. Div. 697; 201 N. Y. 561; *Nat. Park Bank v. Billings*, 144 App. Div. 536; 203 N. Y. 556; *Robinson v. Martin*, 200 N. Y. 159.) Careful consideration of the whole will discloses that it was the intention of the testator that the death of a son prior to the death of his mother without leaving issue divested him of any interest in the estate and that, therefore, nothing passed under the son's will. (*Matter of Wilcox,* 194 N. Y. 289; *Clark v. Cammann*, 160 N. Y. 315; *Greenland v. Waddell*, 116 N. Y. 234; *Doane v. Mercantile Trust Co.*, 160 N. Y. 499; *Moore v. Lyons*, 25

Wend. 119; *Livingston* v. *Greene,* 52 N. Y. 118; *Nelson* v. *Russell,* 135 N. Y. 137; *Ackerman* v. *Gorton,* 67 N. Y. 63; *Matter of Young,* 145 N. Y. 535; *Morgan* v. *Collins,* 152 App. Div. 158; *Riker* v. *Gwynne,* 201 N. Y. 143.)

CHASE, J. This action is brought to obtain a construction of the will of Edmund S. Bailey, who died November 4, 1908, leaving a widow and four children, two sons and two daughters, by a previous marriage. Such children were his only heirs at law and next of kin. His son, Edmund Smith Bailey, died January 5, 1912, at the age of twenty-three years, leaving a widow but no descendants. He left a will which has been duly probated as a will of real and personal property, and pursuant to which the defendant, the Farmers' Loan and Trust Company, has been duly appointed executor and trustee thereunder. By the will of Edmund S. Bailey he gave to his son, Edmund Smith Bailey, certain specific gifts, also, "in special consideration of his bearing my (testator's) name, five shares of the capital stock of the Home Insurance Company, which are to be kept by my executors until he reaches twenty-one years of age, when the same shall be transferred to him together with all income that may have been collected thereon from the time of my decease." He further provided: "And whereas my late wife's aunt, Mrs. Jane V. C. Cooper died some years since leaving a will by which she made certain provisions for the three elder of my children and no provision for my youngest child, Edmund S. Bailey, whereby should my property be equally divided among my children he would not be so well off pecuniarily as the others owing to the said provision made for them by Mrs. Cooper; now, in order to remedy such inequality I provide that before division of my residuary real estate into shares under the Ninth clause of this will my trustees shall set apart therefrom for the benefit of my son, Edmund S. Bailey, the sum or value in their opinion of Twenty thousand ($20,000) dol-

lars, and after the division of the balance of the said residuary estate into as many equal shares as I leave children or descendants of children under the said Ninth clause, the said $20,000 so first set apart shall be added to the aliquot share of my son Edmund S. in the balance of said residuary estate and be held for his benefit and belong to him subject to the provisions as to the income and principal of my residuary estate and the trust shares therein hereinafter contained."

He further provided that "*Seventh.* All the rest, residue and remainder of my estate, real and personal, I give, devise and bequeath to my executors hereinafter named as trustees, nevertheless for the uses and purposes following: Except as hereinafter modified by instructions to and discretions conferred upon them, I direct them to convert all my said residuary estate, real and personal, into cash as soon as and when they may deem best and reinvest the proceeds in improved real estate situated in the City of New York in the Borough of Manhattan indicating as my preference. * * * And in case I shall at my decease have investments in any of the foregoing securities, bonds or stocks I empower and advise my executors and trustees to retain the same as trust investments. And I direct that my said residuary estate shall be held and managed by my said trustees during the life of my wife should she survive me and from the net income thereof they shall pay to her quarterly the sum of Five thousand dollars ($5,000), intending hereby to provide for her an income at the rate of twenty thousand dollars ($20,000) per annum; and during the life of my wife from any balance of the net income received from the said residuary estate after fulfillment of the aforesaid provisions for my wife my trustees shall pay over to my son Edmund Smith Bailey or apply to his use so long as he shall remain a minor, the proportion of such balance of residuary income earned by $20,000 thereof, and shall divide the balance yet remaining of such income into as

many equal shares as I shall leave me surviving children
or descendants of children including the said Edmund S.
Bailey and shall apply such shares of income to the use
of those of my children or descendants who shall be
infants and pay over to those of them who shall have
reached majority the shares of income set apart for them
the descendants of any deceased child of mine to take the
share which their parent (my child) would have taken if
living."

He further provided: "*Ninth.* After the death of my
wife I direct that my whole residuary estate including
the 74th street house given to her for her life or its pro-
ceeds if sold shall be divided by my trustees subject to
the provision for the increase of the share therein of my
said son Edmund S. Bailey hereinbefore contained into as
many equal shares as I shall leave children or descendants
of children, one share for the benefit of each child and one
for the benefit of the descendants taken together of any
such deceased child and the said shares shall be held and
managed by my trustees and the income from each share
during the infancy of the persons for whom it is held
shall be applied by my trustees under this will for the
benefit of such person and as each of said beneficiaries
reaches the age of twenty-one years he or she shall be
paid thereafter the net income of the trust share held for
him or her; unless such person was born after my death
in which case he or she shall be paid the principal of the
trust share held for him or her to the time of attaining
majority. Upon the attaining of the age of thirty years
by either of my sons the principal of the share until that
time held for such son shall after the death of my wife
be paid over, transferred or conveyed to him. Should
either of my sons or daughters at any time die before me
leaving lawful issue surviving such issue shall take the
same share of principal and the same share of income the
parent my son or daughter would have taken under this
will if living."

It is provided that the shares of the residuary estate held in trust for the daughters of the testator shall be so held during their lives, respectively, and at the death of the daughters, respectively, "The same shall go to her issue if any in equal shares per stirpes, but in case she shall leave no issue, then the trust share to that time held for her shall go to the Children's Aid Society incorporated in the year 1855 under the laws of the State of New York, to be used for the purposes of said Society, more especially for the support of the Industrial Schools."

It was found by the trial court and it is not disputed "that every legacy or other provision or claim in favor of any person not a party to this action has been paid or otherwise satisfied." And "that since the death of the testator, Edmund S. Bailey, the income on his residuary estate has amounted to upward of $60,000 a year. The trustees have paid $20,000 a year to testator's widow and up to the time of Edmund Smith Bailey's death on January 5, 1912, had from time to time distributed the balance of the income equally between testator's four children * * * except that Edmund Smith Bailey had been paid in addition to his one-quarter share the proportionate amount of the income earned by the sum of $20,000."

The Special Term by interlocutory judgment adjudged in substance that under the will of Edmund S. Bailey his son, Edmund Smith Bailey, took a vested interest upon the death of Edmund S. Bailey in the sum of $20,000, and also in one-fourth part of the testator's residuary estate after deducting from said residuary estate said sum of $20,000, and in the income on said $20,000, and the one-fourth part of the testator's residuary estate after deducting said $20,000, subject to the payments to said Susannah Gibson Bailey for life, and to the principal being held in trust as provided by said will, and that Edmund Smith Bailey was not divested of his interest in the estate of his father, Edmund S. Bailey, by reason of his

death in the lifetime of the testator's widow and before
he reached the age of thirty years, and that said interest
of Edmund Smith Bailey in said sum of $20,000 and in
said one-fourth part of the testator's residuary estate after
deducting said $20,000 passed under his, Edmund Smith
Bailey's, will in accordance with the terms thereof.

The Appellate Division reversed the interlocutory judg-
ment of the Special Term and construed and adjudged
the will of Edmund S. Bailey, deceased, "to mean that
the testator intended to divide all of his children's income
earned and accruing after the death of his son, Edmund
Smith Bailey, into as many shares as he had children or
descendants of deceased children living during the period
in which the income has been received and is to be
divided; that such income was payable only to the tes-
tator's then living children and then living descendants
of any deceased child, if any." An appeal was taken from
such judgment of reversal to this court pursuant to
an order of the Appellate Division, by which it certified
that in its opinion questions of law are involved which
ought to be reviewed by the Court of Appeals. The ques-
tions certified are as follows: 1. Did the testator's son,
Edmund Smith Bailey, have any vested interest in the
income of the estate of his said father, the testator,
Edmund Smith Bailey, and if so, did such interest pass
under the will of said Edmund Smith Bailey, the son
of the testator ? 2. Did the testator's son, Edmund
Smith Bailey, have any vested interest in the principal
of the estate of his father, the testator, and if so, did
such interest pass under the will of said Edmund Smith
Bailey, the son of the testator ?

In our opinion the intention of the testator, as gathered
from all of the provisions of the will, was to make vested
gifts to his son, Edmund Smith Bailey, subject to the
provisions therein for his widow, and also postponing the
time when his son should have possession of such gifts.
Such intention, so far as it relates to the gift of five

shares of the Home Insurance Company capital stock, appears in definite and certain language. Such stock is given and bequeathed to him, to be kept by the testator's executors, and transferred to him with the income collected thereon from the time of the testator's decease, when he, Edmund Smith Bailey, reaches twenty-one years of age. Such intention clearly appears in connection with the setting apart of $20,000 for Edmund Smith Bailey before the division of the residuary real estate. The will provides: "The said $20,000 so first set apart shall be added to the aliquot share of my son Edmund S. in the balance of said residuary estate and be held for his benefit and *belong to him*, subject to the provisions as to the income and principal of my residuary estate and the trust shares therein hereinafter contained."

The language so employed shows that the testator intended that such $20,000 should *belong* to Edmund Smith Bailey. The testator's intention as to the residue appears in the fact that the income is to be divided "into as many equal shares as I (testator) shall leave me surviving children or descendants of children, including the said Edmund S. Bailey, and shall apply such shares of income to the use of those of my children or descendants who shall be infants, and pay over to those of them who shall have reached majority the shares of income set apart for them. The descendants of any deceased child of mine to take the share which their parent (my child) would have taken if living." The division was directed to be made among the children or descendants of children surviving the testator. The subsequent provision in that part of the will quoted relating to the descendants of any deceased child refers to the descendants of children of the testator who had died prior to his decease.

The controlling date in determining the gift of income is the date of the death of the testator. The testator's intention appears again in the ninth paragraph of the will relating to the division of the residuary estate after

the death of his widow. The testator provides that such residue "shall be divided into as many equal shares as I (testator) shall leave children or descendants of children. One share for the benefit of each child and one for the benefit of the descendants taken together of any such deceased child."

The important date again is the date of the death of the testator. The residuary estate is to be held in bulk for convenience and to insure the payment of the annuity to his widow. Subject only to such life estate, the testator intended a division into shares as of the date of his death. For convenience, and because the will directs that a part of his real estate be held for the use and benefit of his widow for her life and to insure the payment of the annuity to her, there is no direction for the sale of his real estate or an actual division of his residuary estate until after the death of his wife. The postponement of the actual division of the residuary real property for the reasons stated should not affect the intention otherwise clearly shown of a division of income and principal as of the date of his death. In the case of Edmund Smith Bailey, the $20,000 was set apart for his benefit before the division of the residuary estate, and the testator directed that such $20,000 should be added to the aliquot share of his son, Edmund Smith, in the balance of said residuary estate and be held for his benefit and belong to him.

There is no apparent distinction to be made between the $20,000 so first set apart and the balance constituting the aliquot share of Edmund S. in the residuary estate; and it seems to us that it was the intention of the testator that the share, together with the $20,000, should belong to Edmund Smith Bailey. It would be difficult to gather from the will an intention on the part of the testator to withhold the vesting of the aliquot share of Edmund Smith in the balance of his residuary estate, while a clear intention is shown that the $20,000 first set

apart to him and added to such aliquot share should be so vested in him. It was so intermingled that the testator should not be held to have had one intention as to the $20,000 and a wholly different intention as to the one-quarter of the residue after setting apart such $20,000, unless such difference of intention appears by plain language.

It also appears by the ninth paragraph of the will that the testator, in speaking of the actual division of the residuary estate after the death of his widow and of the same being held for the benefit of his sons, respectively, refers to such shares as until that time held for such sons. It thus appears that although the residuary estate is held in bulk, that the part ultimately to be paid over, transferred and conveyed to Edmund Smith Bailey is at all times prior to the time when it is so paid over, held for and vested in him notwithstanding it is included for convenience in the residue as a single fund.

The intention of the testator being reasonably clear it is quite unnecessary to discuss the decisions made in other cases involving the vesting of property held in trust. Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction. (*Roosa* v. *Harrington,* 171 N. Y. 341; *Matter of Tienken,* 131 N. Y. 391; *Robinson* v. *Martin,* 200 N. Y. 159; *Matter of James,* 146 N. Y. 78.)

The law favors the vesting of remainders. (*Livingston* v. *Greene,* 52 N. Y. 118; *Matter of Brown,* 154 N. Y. 313.)

We think that the determination of the Special Term was right, and that the order of the Appellate Division should be reversed and the interlocutory judgment of the Special Term affirmed, and the questions certified to us should be answered in the affirmative, with costs in both courts to the appellants, other than Susannah Gibson Bailey, payable out of the estate.

CULLEN, Ch. J. (concurring).   I concur in the reversal
of the order of the Appellate Division for the reasons
stated in my dissenting opinion in *Dickerson* v. *Sheehy*
(209 N. Y. 592).   If the decision in that case were to
be followed I should be constrained to vote for affirmance
of the order.   The opinion of my brethren in this case,
proceeds on the rule that a gift of income tends to vest in
the beneficiary the capital of which the income is given,
a rule well recognized by the text-writers (Jarman on
Wills, p. 802), and relied on by me in the *Dickerson* case.
No opinion was written by the majority of this court in
that case, but the decision of the Appellate Division (156
App. Div. 101) proceeded on the theory that the rule was
inapplicable because in that case the principal of the fund
was not severed from the general estate, but the bequest
was only of a part of the aggregate income of the whole
residuary estate, and I assume that the decision of this
court proceeded on the same ground.

In the respect referred to the difference, such as it is,
between the provisions of the wills in the two cases tends
far more strongly to support the theory of a vested inter-
est in the earlier case than in this.   In the *Dickerson*
case the direction was to apply two-fifths of the rents
to the testator's widow during life, and one-half of
the remaining three-fifths to the testator's son Edward
(the one who had died and whose share was in con-
troversy) until he attained the age of twenty-five
years, and then to pay over to him three-tenths of
the residuary estate, the share of that residuary, the
income of which was given to him.   In the present case
likewise the residuary estate is given *in solido* in trust to
pay over out of the net income to the testator's widow
the sum of $20,000 annually, and divide the remainder
thereof among the testator's children and the issue of
deceased children equally, and upon the death of the
widow, then to divide the residuary estate into shares.
The present case falls far short of the *Dickerson* case, so

far as the rule of vesting by reason of a gift of the income of a share. There is no share to be set apart to the children of the testator until the death of the widow, while as to the intermediate income there is no gift of the income until after the death of the widow either upon any particular fund or upon any particular portion of a greater fund. If the income of the residuary estate in any year should fall short of $20,000, the children of the testator would not receive a penny during that year, and under the best of circumstances the income payable to each child would vary from year to year according as the income might vary. How then is it possible to say that the income on any particular fund or share of a fund was given to the deceased child? While in the *Dickerson* case, let the income in any year be big or little, the two sons were always entitled to receive each three-tenths, and the practical result was exactly the same as if the testator had directed his trustees to hold three-tenths of the estate in trust to apply the income to the benefit of the son. The conclusion of my learned brother that the share of the deceased child, Edmund Bailey, vested, as I understand it, rests on the provision relative to the gift in his favor of the sum of $20,000. But here, as in respect to the main share, until the death of the widow he is given, not that sum of $20,000, but only the income that the sum may earn, and the sum is not added to his share until the death of the widow, when his share first comes into existence. (See 9th clause of the will.) Assuming, however, that the gift of $20,000 was vested, I am at a loss to perceive just how that tends to prove that the testator intended his other gift made in entirely different language to be vested, and still less how it would tend to vest the share of the other son who might have died, the same as Edmund, under the age of thirty years.

In my judgment, the decision we are about to make can be safely rested on one ground alone, and that is the one stated by Judge ANDREWS in *Goebel* v. *Wolf* (113

N. Y. 405, 415): "This construction (*i. e.*, that the gift was vested) also prevents the disinheritance of issue of any child who may marry and die before the expiration of the trust period, a consequence which no one can doubt the testator never intended." Indeed, to see how far this court will go in holding a legacy vested rather than disinherit remaindermen who may die before the termination of the precedent estate, I refer to *Connelly* v. *O'Brien* (166 N. Y. 406). That rule necessarily would have led to a reversal in the *Dickerson* case. So also the rule cited in the majority opinion in this case — that the law favors the vesting of remainders — was equally applicable to the *Dickerson* case.

If, however, I err in underestimating the force to be attributed to the $20,000 gift to Edmund Bailey in the construction of the principal testamentary provision in his favor, still this much must be conceded, that no counsel, however eminent, could have asserted with any degree of confidence, on that ground alone, that this case would be decided as we are now deciding it. The result of the rule as to the construction of a gift, confined to a mere direction to divide and pay over, has been productive of more litigation than any other rule as to the construction of wills. That nearly all laymen and very many lawyers are wholly ignorant of it, there can be no question. Despite of that fact, if it had become a rule of property, it should be respected whether good or bad, but instead of being a rule of property, it is a rule which unsettles title to property, and the condition of the decisions is such that in almost every case counsel is justified in insisting, if not actually required to insist, that his client shall obtain the decision of the court of last resort on the question. It may very well be that the rule has obtained so long that entire relief from it cannot be obtained except by legislative action. Still, it seems to me the plain duty of the courts to limit it as far as practicable, and the doctrine formulated by Judge ANDREWS

3

would at least relieve the application of the rule from very much of its present uncertainty, and save the public and the clients from litigation, as well as avoid the disinheritance of the issue of testators.

GRAY, HISCOCK, COLLIN and MILLER, JJ., concur with CHASE, J.; WILLARD BARTLETT, J., concurs with CULLEN, Ch. J.

Ordered accordingly.