# MEMORANDA

GEORGE P. MONTAGUE and Another, as Surviving Substituted Trustees under the Last Will and Testament of HENRY CARY, Deceased, Plaintiffs, *v.* CHARLES P. CURTIS, as Administrator of the Will Annexed, etc., of THOMAS G. CARY, Deceased, and Others, Defendants.*

(Supreme Court, New York Special Term, January, 1919.)

*Wills — when remainders vest — estate in remainder " after the fulfillment of all the duties and trusts," etc.— intention to limit quantum of estate and not to postpone vesting — when trusts are independent and not interdependent. Trusts — deed in nature of marriage settlement — reversion as part of grantor's residuary estate.*

ACTION for an accounting.

Jay & Candler, for plaintiffs.

Winthrop & Stimson, for defendants Charles P. Curtis, individually, etc., and others.

Bleecker & Tuckerman, for defendants Hester Cunningham and others.

Bigelow & Wise, for defendants Ida Cary Cunningham and others.

---

* Affirmed by the Appellate Division, First Department, on the opinion of the referee.— [REPR.

Hays, Hershfield & Wolf, for defendants Harriet A. C. Montague and others.

Edward C. Moen, for defendants Alfred Tuckerman and others.

Camillus · G. Kidder, for defendants Jacob W. Tuckerman and others.

George B. Glover, for defendant Karl Minnigerode.

Theodore F. Humphrey, guardian *ad litem,* for infant defendant Ellen Sears Curtis.

Algernon S. Norton, guardian *ad litem,* for infant defendant Gracie Wrenn.

Henry B. Barnes, guardian *ad litem,* for infant defendants Lucy Swann and Lillian L. Swann.

SCOTT, FRANCIS M., Referee. This is an action for the settlement of the accounts of the surviving substituted trustees under the will of Henry Cary, deceased, from April 30, 1907, the date as to which their accounts were stated and settled by the decree in a former action, down to the present time.

No question is made as to the administration of the estate, or as to the accuracy of the figures presented by the plaintiffs. Certain defendants have, however, filed exceptions directed to the distribution of the funds received by the trustees. These exceptions present only questions of law as to the proper construction of the will of the decedent, and of a deed of trust in the nature of a marriage settlement made by him during his lifetime. It is these questions only which require consideration.

The will in question was dated on January 10, 1856, and admitted to probate by the surrogate of New York county on November 9, 1857, the testator having died on August 18, 1857.

The will may be summarized as follows:

After certain specific legacies and a few small cash legacies, the testator gave his entire estate to his executors in trust for the following purposes:

I. To pay out of his personal estate his debts (except those secured by mortgage) and his funeral expenses.

II. To pay all mortgages, except one, and other incumbrances upon his real estate, out of the personal property, if possible, and, if not possible, to apply to such payment the income of the real estate.

III. To administer the estate, with power of sale and substitution.

IV. "*Seventh Item.* And on the further trust and restriction to apply no part of my estate, except as before directed, to the execution or accomplishment of any trust hereinafter declared, until all items preceding such trust, in the order and sequence herein pursued, shall be paid and discharged, or in the judgment of my executors shall be sufficiently and amply provided for by property of my estate in their hands."

Subject to this direction he authorized and empowered his executors:

(*a*) Out of any assets or property of his estate to apply to the use and maintenance of his son, Henry Cary, Jr., the sum of $2,000 per annum.

(*b*) To pay to his wife, without specifying whether from income or principal, the sum of $1,000 per annum, or the equivalent of £200 per annum, net, for her life.

(*c*) He gave, and authorized and directed his executors to pay out of the net income of his real estate, or of any property substituted therefor, annuities of $500 each, to nineteen relatives for life, specially declaring it to be his meaning and intent that " all the legacies or annuities named in this item shall stand on the same footing, and be paid in full or rebate *pro rata* if necessary, without favor or preference to either over the other."

(*d*) He provided for the payment from the same source, of annuities of varying amounts to three persons for life, with the same provision for payment in full or prorating as is quoted above.

(*e*) He provided for the payment from the same source, of annuities of varying amounts to five persons for life, with the same provisions for payment in full or prorating as is quoted above.

(*f*) He authorized his executors in their discretion to pay or apply to the use of his son a sum per annum not exceeding $2,000, in addition to the annuity previously provided for.

(*g*) He provided for the payment to three nieces of annuities of $500 each, in addition to those theretofore given them.

After providing for the foregoing annuities, the testator disposed of his residuary estate as follows:

"*Thirteenth Item.* I give, devise and bequeath all my said residuary estate, *after the fulfillment of all the duties and trusts herein declared,* or such of them as shall be legal and valid, to my four married brothers, Thomas, George, Robert and William, in equal portions, share and share alike, hereby constituting them my residuary legatees and devisees, the child or children of any deceased one of said brothers to take such share as his, her or their parent would have been entitled to if living."

The testator then appointed his said four brothers, by name, the executors and trustees of and under his will, "recommending, but not directing them to retain my real estate undivided as long as possible."

The question most seriously discussed before me is, as to when the residuary estate became vested: whether, upon the death of the testator, his four brothers took a vested remainder which was descendible, divisible, or alienable in the same manner as an estate in possession, or whether the date of vesting was intended to be postponed until all the duties legally

imposed upon the executors, or their successors, as to the payment of annuities had been fully performed. The former view is contended for by the trustees and certain beneficiaries. The latter view is contended for by two grandnieces of the testator.

The question arises in this way: One of the four brothers named as residuary legatees, George B. Cary, died in 1880, after the death of Henry Cary, the testator, but before the death of the testator's son, Henry Cary, Jr. (who died in 1885), and of his widow (who died in 1916). The exceptants, Ida Cary Cunningham and Alice Cary Williams, are the daughters of William A. Cary, a son of said George B. Cary, and who predeceased his father.

George B. Cary left a will by which he gave the whole of his interest in the estate of his deceased brother, Henry Cary, to his son, Edward M. Cary, and his daughter, Fanny C. Cunningham, and their heirs, thus excluding from participation in any interest he may have had in the estate of Henry Cary, his granddaughters, the exceptants here, to whom, however, he gave cash legacies.

If, as the accountants contend, George B. Cary acquired a fully vested remainder in the estate of Henry Cary upon the death of the latter, subject to the payment of the annuities, the exceptants take no part of the estate under the will of their grandfather.

If, however, it was the intention of Henry Cary, and the true construction and meaning of his will, that the remainder interest should finally vest only after all the annuities had ceased, George B. Cary's remainder interest, vested while he lived, was divested by his death, and the substitutional gift to his children took effect when Henry Cary's widow died in 1916. In other words, the claim of the exceptants is that the death of a residuary legatee referred to in the thirteenth item of the will, meant a death during the con-

46

tinuance of the trust estate, and not a death during the lifetime of the testator.

The only difficulty in the case, as I view it, is in determining the meaning and effect to be given to the words, " after the fulfillment of all the duties and trusts herein declared, or such of them as shall be legal," in the thirteenth item of the will. The question is whether or not the testator intended to limit the *quantum* of the estate devised to his four brothers, or to postpone the date upon which such estate should vest in them. With those words out of the clause, there would be no doubt that each of the brothers would have taken an absolute estate in remainder upon the death of the testator, subject only to the direction for payment of the annuities. *Connelly* v. *O'Brien*, 166 N. Y. 406, and cases therein cited. As was said in the case cited (p. 408): "A remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates. The adverbs of time, therefore, such as *when, then, after, from and after*, etc., in a devise of a remainder limited upon a life estate, are construed to relate merely to the time of the enjoyment of the estate and not to the time of its vesting in interest. The law favors such a construction of the will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate."

Of course this rule of construction must yield whenever it clearly appears from the language used by the testator that he intended to postpone the vesting of the remainder to a date which might be subsequent to his own death. Among such cases are *Lyons* v. *Ostrander*, 167 N. Y. 135; *Marsh* v. *Consumers Park Brewing Company*, 220 id. 205, and others cited by the exceptants.

In each of these cases the court found in the language of the will itself what it considered an

unmistakable intention on the part of the testator that the vesting of the remainder should be postponed until the determination of the precedent estate.

The question here, therefore, is whether or not the testator has attached futurity to the gift of the remainder devised to his four brothers. The only words which, from any point of view, can be considered as having that effect are those already quoted: " after the fulfillment of all the duties and trusts." If any weight is to be given to the juxtaposition of these words with reference to the remainder of the item, it might plausibly be argued that they qualify only that which is given, rather than the time when the gift is to take effect. It is not the gift which is qualified, but the thing given. Apart from that consideration it is clear that what was to be fulfilled were the duties and trusts imposed upon the executors, and to determine what those were it is necessary to consider the will as a whole. The scheme which the testator had in mind was to provide annuities for a considerable number of persons. These he divided into groups, not into classes, as that word is usually used in construing wills. That is to say, he made no provision for any group as a class, but for the several members of each group as individuals. The purpose of making the division into groups was, as indicated in the seventh item, that in case of a shortage of the estate and its inability to meet and pay all the annuities, a preference should be given to the several annuitants or groups of annuitants in the order in which they were named in the will.

If the testator attempted and intended to place his whole estate in trust until the last annuitant should die, the whole trust would be invalid. In this case, of course, the whole residuary estate would have vested at once in the four brothers, since the residuary clause expressly provided for the contingency of some of the trusts being declared illegal. The exceptants do not,

however, go to this length. They do contend that the will created only a single trust, and that as to all the annuitants except the testator's son and widow, it was invalid as covering more than two lives. They contend, however, that, inasmuch as the son and widow were the primary objects of the testator's solicitude, the trust should be upheld as to them, the provisions for the other annuitants being elided. This would be a very evident departure from the expressed will of the testator, and would scarcely be justified under the authorities which permit the elision of invalid provisions in a will when the main purpose and general scheme can still be preserved. I do not think, however, that it is necessary to declare the so-called trust or trusts invalid either wholly or in part.

The general restrictions upon the executors contained in the seventh item, above quoted, furnish the key both to the intention of the testator and to the delimitation of the duties and trusts imposed upon the executors. In prescribing the sequence in which the annuities are to be paid, it is provided that no part of the estate should be applied to the execution or accomplishment of any trust hereinafter declared (to pay annuities) until all items preceding such trust, in the order and sequence herein pursued, shall be paid and discharged, " or in the judgment of my executors shall be sufficiently and amply provided for by property of my estate in their hands." This language indicates two things with regard to the testator's intention, *first,* that he was creating not one trust, but several, and *secondly,* that the executors would fulfill their whole duty under the will if they set apart and retained in their hands sufficient property to amply provide for the payment of each annuity.

As to the provisions made for the son and widow, I am very clearly of the opinion that they are not interdependent, and that the will created two independent trusts. As to the trusts created for the

benefit of the several other annuitants, I think that they also are independent, and that as to each of them the executors would have fulfilled their whole duty if they had set aside and held sufficient of the estate to amply provide for them. *Mason* v. *Mason,* 2 Sandf. Ch. 432; *Matter of United States Trust Co.,* 86 Misc. Rep. 603; affd., on opinion below, 168 App. Div. 903; affd., no opinion, 216 N. Y. 639. Upon this construction, which appears to be the one adopted for sixty years by every one connected with the estate except these exceptants, there was no unlawful suspension of the power of alienation, and there was not one trust term, but many. It does not, of course, militate against the constitution of several trusts that the capital of the estate was to be kept together for convenience and to insure payment of the annuities to the son and widow, which were charged upon the whole estate. *Cammann* v. *Bailey,* 210 N. Y. 19; *Matter of United States Trust Co., supra.*

I am, therefore, of the opinion that the testator did not intend to provide and did not provide that the vesting of the remainder devised to his brothers should be postponed until the death of the last survivor of the many annuitants named in his will, or until the death of the survivor of his son or widow. The exceptions filed by Ida Cary Cunningham and Alice Cary Williams should, therefore, be overruled.

A second question, raised by exceptions, also requires consideration. It relates to the effect to be given to a deed of trust, in the nature of a marriage settlement, executed by Henry Cary in 1851 on the eve of his marriage to Eliza Vincent Lowis, a second wife. By this deed he conveyed to two trustees a plot of land in the city of New York, in trust to collect the income (after the death of said Henry Cary); and out of the income to pay to said Eliza (or Elizabeth Vincent Lowis) the annual sum of £300 during her life, "And to apply the rest and residue of said rents

to such purposes as may be indicated by the said Henry Cary in his last will and testament, and at the expiration of the estate of said Elizabeth Vincent Lowis in the premises, to wit, by her decease, then in trust to convey the said real estate with the appurtenances, to the heirs and assigns of the said Henry Cary forever.''

The question is whether the grantor in this deed reserved, after the completion of the trust term, a reversion which became a part of his estate and passed under the residuary clause, or a remainder which passed to his heirs at law represented by the exceptants who now raise the question.

The former view has been had by and acted upon by the accountants, who have always managed the real property in question as part of the estate of Henry Cary, deceased. I think that there is no doubt that this is the proper view. It undoubtedly was the rule at common law that the limitation of a remainder to the grantor and his heirs, or to the grantor's heirs, was void as a remainder, and that the estate remained in him as a reversion. Co. Litt. 22b; *Read & Morpeth* v. *Errington,* Cro. Eliz. 321; Moo. 284; Greenl. Cruise Real Prop. tit. XI, chap. 4, § 31; 4 Bacon Abr. 298; 24 Am. & Eng. Ency. of Law (2d ed.), 398–421; 16 Cyc. 661; 2 Washb. Real Prop. (6th ed.) 503. And the same rule obtains in other jurisdictions in this country. *Akers* v. *Clark,* 184 Ill. 136; *Hobbie* v. *Ogden,* 178 id. 357; *Alexander* v. *de Kermel,* 81 Ky. 345; *Mayer* v. *Kuykendall,* (Ky.) 112 S. W. Repr. 673. In our own state the question does not seem to have been precisely passed upon by an authoritative decision, but the rule has not been changed by statute. By the Revised Statutes which went into effect in 1830 and were in effect when the deed of trust was made, it was provided that ''A reversion is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator commencing in possession on the

determination of a particular estate granted or devised '' (3 R. S. [7th ed.] 2176, being tit. 2, art. 1, § 12), and the same provision is now incorporated in the Real Property Law, section 39. Being an expectant estate, such a reversion is descendible, devisable and alienable.

The exceptants refer to two cases which they deem to have established a different rule in this state. They are both Special Term cases. *Shepard* v. *Shepard,* 2 Misc. Rep. 556, does not seem to have been generally followed or cited. It relies in the main on *Moore* v. *Littel,* 41 N. Y. 66, which had to do with a grant over to the heirs of the grantee or beneficiary, not to the heirs of the grantor, as in the present case. *Doctor* v. *Hughes,* 154 N. Y. Supp. 985, in so far as it may be considered applicable to the present case, was overruled by the Appellate Division in *Doctor* v. *Hughes,* 174 App. Div. 768. It is to be noted that in both of these cases the grantor used the descriptive words '' heirs at law,'' and not the word '' heirs '' which has a well-established technical meaning. That Henry Cary provided in the alternative that what was left of the estate after the trust for his prospective wife should be fully executed should go to his '' heirs *and assigns* '' argues forcibly that he did not intend by the deed to create an estate of inheritance in those who at his death should answer to the description of heirs. He thereby reserved to himself a clear right to assign away the residue of the estate, subject to the fulfillment of the trust.

I am therefore of the opinion that the exceptions of the exceptants Tuckerman and those claiming in their right as heirs at law of Henry Cary, deceased, should be overruled.

This disposes of all the questions litigated before me. If the accountants should elect to exercise the discretion vested in them by the seventh item of the will and set aside sufficient of the estate to insure the

continued payment of the few outstanding annuities, there appears to be no reason why they may not be relieved of any further duties with respect to the balance of the estate, and be allowed to account for it as principal. In that event their commission may properly be adjusted and allowed as suggested by them. A report containing findings of fact and conclusions of law may be prepared in accordance with the views hereinbefore expressed, and settled before me on notice to all parties interested.

Ordered accordingly.