In the Matter of the Estate of SAMUEL M. JARVIS, Deceased.

Surrogate's Court, Westchester County, June 7, 1934.

*McCombs & Ryan* [*Frederick R. Ryan* and *Samuel A. Adamson* of counsel], for the petitioning trustees.

*Wollman & Wollman* [*Achilles H. Kohn* of counsel], for Sarah Elnora Goodman and others.

*James B. Stilson*, for Hugh S. Jarvis, as administrator, etc., of Hugh S. Jarvis, Jr.

SLATER, S. This is an application for the construction of the decedent's will, occasioned by the fact that Hugh S. Jarvis, Jr., one of the decedent's grandchildren, died September 3, 1933, intermediate the trusts, without leaving issue him surviving. The petitioning parties are the trustees of the two trusts created, one for the benefit of Sarah Elnora Goodman as life user, and the other the residuary trust.

Samuel M. Jarvis died December 26, 1913, leaving a will executed October 27, 1913, and admitted to probate January 5, 1914.

The trust terms in the will were not set forth in a chronological sequence by the draftsman. They jump here and there, creating the Goodman trust in one article, providing for the remainders in another article, with a substitutionary clause in still another article. The creation of the Goodman trust is found in article IV, section 2, of the will. It gives the sum of $400,000 to trustees to hold, with the direction to pay the net income annually to the daughter, Sarah Elnora Goodman, during her natural life. In article II, section 2, a trust is established for the widow.

In article IX the testator provides as follows:

" Article IX. Upon the death of my said wife Priscilla Jarvis, I give and bequeath the principal sum of the said trust fund of Four hundred thousand dollars ($400,000) established for her benefit to my three children Permelia M. Vaughan, Hugh S. Jarvis and Sarah Elnora Goodman in equal shares.

" Upon the death of my said daughter Sarah Elnora Goodman, I give and bequeath the principal sum of the said trust fund of Four hundred thousand dollars ($400,000) established for her benefit to my executors hereinafter named in trust until my granddaughter Priscilla Goodman shall attain the age of twenty-one years, or shall sooner die, to collect the rents, issues, profits and income thereof, and to pay and distribute such net income

annually or at more frequent intervals as may be determined by my executors in their discretion as follows:

" To my grandson, Hugh S. Jarvis, Jr., son of Hugh S. Jarvis, two-sixths thereof.

" To my grandson, George E. Jarvis, son of Hugh S. Jarvis, one-sixth thereof.

" To my granddaughter Priscilla Goodman, daughter of Mrs. Sarah Elnora Goodman, two-sixths thereof.

" To my grandson Charles E. Goodman, son of my daughter Mrs. Sarah Elnora Goodman, one-sixth thereof.

" And upon the attainment of the age of twenty-one years by my said granddaughter Priscilla Goodman, or her earlier death, to dispose of and distribute the principal sum thereof, as follows: To the said Hugh S. Jarvis, Jr., two-sixths thereof; to the said George E. Jarvis, one-sixth thereof; to the said Priscilla Goodman, two-sixths thereof; and to the said Charles E. Goodman, one-sixth thereof."

The primary trust for the daughter, Mrs. Goodman, is still running; the secondary trust for the four named grandchildren has never come into being.

The other trust, known as the residuary trust, the principal of which is about $400,000, is provided for in the following terms:

" Article X. All the rest, residue and remainder of my property and estate of whatsoever nature and wheresoever situate and whether acquired before or after the execution of this will, including all property attempted to be disposed of by this will, the disposition of which by reason of lapse or other cause shall fail to take effect, and all property over which at the time of my death I shall have any power of testamentary disposition, I now dispose of as follows, that is to say:

" I give, devise and bequeath all such residue of my estate to my executors hereinafter named in trust to invest and keep the same invested and to collect the issues, rents, profits and income thereof until my granddaughter Priscilla Goodman shall attain the age of twenty-one years or until her death, in case she shall die before attaining the age of twenty-one years, and also until my grandson George E. Jarvis, shall attain the age of twenty-one years, or shall die earlier, in case my said granddaughter Priscilla Goodman shall not attain the age of twenty-one years, and shall be survived by my said grandson George E. Jarvis, and to pay and distribute such net income annually or at more frequent intervals as may be determined by my executors in their discretion, as follows:

" To my grandson Hugh S. Jarvis, Jr., son of Hugh S. Jarvis, two-sixths thereof.

" To my grandson George E. Jarvis, son of Hugh S. Jarvis, one-sixth thereof.

" To my granddaughter Priscilla Goodman, daughter of Mrs. Sarah Elnora Goodman, two-sixths thereof.

" To my grandson Charles E. Goodman, son of my daughter Sarah Elnora Goodman, one-sixth thereof.

" And upon the expiration of the said trust as above provided, I direct that the principal of my said residuary estate be disposed of and distributed as follows: To the said Hugh S. Jarvis, Jr., two-sixths thereof; to the said George E. Jarvis, one-sixth thereof; to the said Priscilla Goodman, two-sixths thereof; and to the said Charles E. Goodman, one-sixth thereof.

" If there should be issue of my daughter Permelia M. Vaughan living at the time of my death, I direct that the principal and income of my residuary estate, and also of the trust funds provided for in Article IX of this Will shall be equally paid to and distributed among all my surviving grandchildren, share and share alike, at the times and in the manner in Articles IX and X of this Will provided."

The residuary trust was set up and the income thereof has been paid to the four grandchildren. It becomes necessary for the trustees of this trust to judicially settle their accounts because Priscilla Goodman and George E. Jarvis have each attained the age of twenty-one years and the trust is at an end.

Said article X of the will continued with the following clause which relates to the Goodman trust and the residuary trust:

"In case any of my grandchildren herein provided for shall die before the *time fixed for the distribution of the said residuary estate,* and the said *trust funds,* as provided in Articles IX and X of this Will, leaving issue surviving, I give the share of the child so dying to such issue equally *per stirpes;* and in case such grandchild shall die without leaving issue surviving, I direct the share of the child so dying shall be added to my residuary estate and be distributed among the other grandchildren herein provided for in the same proportions as hereinabove fixed."

Hugh S. Jarvis, Jr., died September 3, 1933, intestate, and without issue. Priscilla Goodman arrived at the age of twenty-one years on October 23, 1933. George E. Jarvis had attained the age of twenty-one years on February 25, 1933. The testator, when he executed the will, had a wife and two daughters, Mrs. Goodman and Mrs. Vaughan, and a son Hugh. Mrs. Goodman had two children. Hugh had two children. Mrs. Vaughan had none. No other grandchild has been born.

The substitutionary clause found in the latter part of article X is causing trouble for the attorneys and the court in the interpre-

tation of the will as to who should take the remainder interest, because the two trusts are referred to in combination in the clause. Here the construction is difficult, due to the lack of skill of the draftsman and the ambiguity of the language. The death of Hugh S. Jarvis, Jr., gives rise to the question as to whether his share in the remainder of the Goodman trust, and in the residuary trust, was vested or contingent. The question also arises as to whether, by reason of the facts herein, the testator, Samuel M. Jarvis, died intestate with regard to Hugh S. Jarvis, Jr.'s, part of the remainder of the Goodman trust, as well as his share in the residuary trust, and also whether, in the event that the decedent died intestate with regard to any of the remainder estates, the decedent's wife, Priscilla Jarvis, is precluded from sharing therein.

It is contended by the administrator of Hugh S. Jarvis, Jr., that the estate of the deceased grandchild in both trusts became vested upon the death of the testator, and the grandchild having died without issue, his interest in both trusts passed to his administrator.

It is contended on behalf of Sarah Elnora Goodman and her children that Hugh S. Jarvis, Jr., in both trusts took a contingent estate, and, upon his death, it passed over to the other three grandchildren.

The Goodman trust will be considered at the outset. This trust was limited upon the life of one of the daughters. It was the primary trust. The will provides for the setting up of another trust of the same principal sum upon the death of Mrs. Goodman to last until the granddaughter, Priscilla Goodman, shall attain the age of twenty-one years or sooner die, and to pay and distribute the income to the four named grandchildren in the same proportions as heretofore stated. This secondary trust for the grandchildren never became effective because Mrs. Goodman is still living. The gift of the estate in remainder is found in the direction to dispose and distribute, upon Priscilla Goodman attaining the age of twenty-one years, or sooner dying, as well as in that part of article X that brings in issue of Permelia M. Vaughan living at testator's death, which article directs that " the principal and income " of both trusts " shall be equally paid to and distributed among all my surviving grandchildren, share and share alike."

What is the effect of the substitutionary clause found in article X of the will upon the interest of Hugh S. Jarvis, Jr., who died before distribution and without issue?

The Goodman trust is measured by the life of Mrs. Goodman, named in the primary trust, and by the life of Priscilla Goodman, named in the secondary trust. By the words of article X, if any

grandchild dies before the time fixed for the distribution of the Goodman trust *without issue* surviving, the share of the child so dying is carried over and added to the residuary estate to be distributed among other grandchildren. The residuary trust is measured by the life of the same Priscilla Goodman, as well as by an added grandchild, George E. Jarvis. By throwing the share of a child dying without issue before the time of distribution into the residuary trust, three independent lives become involved.

The validity of a will must be determined as of the time of the testator's death, and depends not on what has happened since but on what might have happened. (*Matter of Wilcox*, 194 N. Y. 288, 295; *Matter of Trevor*, 239 id. 6, 11.) This part of the substitutionary clause causes the trust to be illegal and void. Undue restraint on alienation is created. The invalidity of the remainders does not, however, violate the primary gift. The loosely drawn substitutionary clause directs the share of any grandchild dying *without* issue before distribution of each trust to be added to the " residuary estate." Mrs. Goodman would have the court transpose and add words in order to make a new will by saying that such share shall be added to (*the shares of the other grandchildren in*) " my residuary estate." The hurdle of the illegal third life cannot be avoided in such manner. The substitution carries the trust share so released into the *residuary estate*, meaning the trust term of the residuary estate.

So much of the substitutionary clause which adds the third life to the trust share is subordinate in importance and is readily separable. In the instant case the " knife may be laid to the branch instead of at the roots." On the principle so well developed, excision may be made. So much of the substitutionary clause as adds any share of the Goodman trust to the residuary trust may be " lifted " out of the will, and the trust for the benefit of the grandchildren and their issue, if any, may be treated as an entirety. (*Matter of Trevor, supra.*)

The first part of the substitutionary clause, which has not been expunged, provides that if any grandchild shall die before distribution of the Goodman trust, *leaving issue surviving*, the share of the child so dying shall pass to such issue equally. After the pruning process and the rejection of the illegal part of the substitutionary clause, the Goodman trust is found to be valid, for the benefit of Mrs. Goodman for life, with remainders in shares to the four grandchildren *nominatim*, and, if any should die before distribution leaving issue, to such issue.

It brings us to the question presented for determination, whether at the time of the death of Hugh S. Jarvis, Jr., before distribution

and without issue, he took a vested, or a contingent, remainder in his share of the Goodman trust.

It is the testator's intention that we are seeking. We take wills as we find them, and this will is " taken on its own merits." " True, the search for intention is often a search after a phantom." (*Matter of Chalmers*, 264 N. Y. 239, 245.) The written document is not scientifically drawn. It is a superb example of bad draftsmanship.

Let us use the occult power of the divining rod to discover the evidences of testator's intention through the several ways selected by the courts to determine intention. We will give consideration to the family relationship, the canons of interpretation as declared in the law, and the expressed intention of the person as disclosed by the use of words.

The testator was a man engaged in large business affairs. The will offers every evidence of an impartially-minded man. He gave equally to all the objects of his bounty. He gave his wife outright $25,000, and created a trust for her in the sum of $400,000. He gave the daughter, Mrs. Vaughan, $25,000 outright, and created a trust for her in the sum of $400,000. After a period of five years Mrs. Vaughan received said principal sum. Mrs. Vaughan had no children. The gift to Mrs. Goodman was limited by her life. He gave to the son $25,000 and created a trust for him in the sum of $400,000, the principal to be paid to him after a period of five years. Upon the death of his widow, the principal of that trust passed " in equal shares " to his three children. Upon the death of Mrs. Goodman, the principal of her trust passed to his four named grandchildren, two children of the son Hugh, and two children of the daughter Sarah Elnora Goodman. One of Hugh's sons received two-sixths, and the other son one-sixth; one of Mrs. Goodman's daughters received two-sixths and the other child received one-sixth; so that Hugh Jarvis' children received one-half of the trust fund and Mrs. Goodman's children the other half. The residuary estate passed into a trust to benefit the four grandchildren in the same manner of equality. He inserted a clause in article X of the will bringing in any issue of Mrs. Vaughan living at his death, so that the income and principal of the residuary trust and the Goodman trust " shall be equally paid to and distributed among all my surviving grandchildren, share and share alike."

There is no direct gift to distributees except the gift implied in a direction to the trustees to distribute. It may be argued that, where there is no direct gift and the word " upon " is used in connection with the direction of payment at a future time, the gift is contingent. However, there are many exceptions to the rule as disclosed by the decisions, such as the fact that the testator speaks

of distribution of parts or shares, the executors and trustees being given a full power and authority to sell real estate; the postponement of the distribution to the named grandchildren for the purpose of letting in an intermediate estate (*Loder* v. *Hatfield*, 71 N. Y. 92, 98; *Matter of Lamb*, 182 App. Div. 180; affd., 224 N. Y. 577); the secondary part of the Goodman trust providing for the payment of the whole income to the four named grandchildren (*Cammann* v. *Bailey*, 210 N. Y. 19, 31); the testator providing for the severance of the trust fund from the general estate (*Vanderpoel* v. *Loew*, 112 N. Y. 167); the persons who take being fixed, being mentioned *nominatim*. All of these considered together evince the intention of the testator not to die intestate. The question is one of intention. All rules are subordinate.

Does any one doubt that, except for the letting in of the intermediate estate, the gift to grandchildren would be deemed vested at testator's death? Such related circumstances rebut the presumption against the vesting arising from the fact that there is no direct gift, but only a direction to pay. The postponement of payment is consistent with the vesting of the estate and the gift of income indicates an intention to vest the principal from which the income is derived. (*Robert* v. *Corning*, 89 N. Y. 226, 241; *Cammann* v. *Bailey*, 210 id. 19, 30; *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 582; *Matter of Embree*, 9 App. Div. 602; affd., 154 N. Y. 778; *Brooklyn Trust Co.* v. *Phillips*, 134 App. Div. 697; affd., 201 N. Y. 561.)

The law favors vesting of remainders (*Livingston* v. *Green*, 52 N. Y. 118), and unless a contrary intention is " unequivocally expressed " it will not be imputed. (*Matter of Brown*, 154 N. Y. 313; *Matter of Chalmers, supra.*) An estate once vested will not be divested, unless all the events which are to precede the vesting of a substituted gift happen. (1 Jarman Wills, 785; 2 Davids Wills, § 932.)

The limitation over to the issue of any grandchildren dying before distribution was a limitation of a future contingent estate to such issue. On the death of any grandchild before distribution leaving issue, the share of the one so dying would immediately vest in such issue and, if there was no issue, it would go to his or her estate. (*Robert* v. *Corning, supra; Harris* v. *Strodl*, 132 N. Y. 392.) It was not a gift limited to take effect upon an uncertain event; it was a gift which the uncertain event might chance to defeat.

*Bowditch* v. *Ayrault* (138 N. Y. 222, 229) held that the gift vested, " subject to be divested by the death of any child before distribution, and by the substitution of his or her descendants, if any were left. If there were no such descendants, then the property remained vested in the child, and upon his death formed part of his estate, subject to be disposed of as the law or his will provided."

The rule was restated in *Stringer* v. *Young* (191 N. Y. 157 [1908]). It was followed in *Kessler* v. *Friede* (29 Misc. 187 [1899]). It was applied by the Second Department in *Staples* v. *Mead* ([1912] 152 App. Div. 745, opinion by WOODWARD, J.). The court said: " The event in this case, the death of the donee leaving issue, did not happen, and his gift was not defeated, but remained vested." (2 Davids Wills, § 932.)

The principle of law declared in *Staples* v. *Mead* (*supra*) was applied in *Matter of Bergen*, KETCHAM, S. (99 Misc. 174); by Surrogate FOLEY in *Matter of Clark* (120 id. 191); by Surrogate WINGATE in *Matter of Leonard* (143 id. 172, 176 [1932]); *Matter of White* (145 id. 796), and *Matter of Croner* (124 id. 846 [1925]). In *Matter of Leonard* he says: " It is for all purposes the absolute property of the person in whom it is vested unless and until the specified contingency òccurs, which takes ownership from one person and places it in another." Surrogate FOWLER wrote upon this principle of law in *Matter of Lowerre* (104 Misc. 570 [1918]) and in *Matter of Lake* (109 id. 287 [1919]). (*Gates* v. *Fisher*, 107 Misc. 53; *Matter of Schloss*, O'BRIEN, S., 122 id. 365; *Matter of Turner*, 135 id. 223; *Matter of Barschall*, 146 id. 742 [1933], DELEHANTY, S.; *Matter of Lutz*, 122 id. 336 [1924], SCHULZ, S.)

In *Livingston* v. *Green* (52 N. Y. 118, 124) the court said: " a vested remainder had been clearly created in his children; and if the death of any of his children had referred to their death after the testator's and before his widow's, it was a death leaving heirs, that is, leaving children. \* \* \* No such case has occurred. They all died without leaving children, that is, heirs within the meaning of this clause; hence, the title over was not defeated. This is clear." (*Matter of Tienken*, 131 N. Y. 391, 408; *Matter of Seebeck*, 140 id. 241, 246; *Matter of Watson*, 262 id. 284, 299; *Eysaman* v. *Nelson*, 79 Misc. 304.)

The will took effect at testator's death, and then the four grandchildren were living. The only thing standing between them and the right to possession of the estate was the intermediate life interest of Mrs. Goodman. Neither the persons to whom, nor the event upon which their estate was limited, was uncertain. (*Matter of Embree, supra.*)

To hold the estate contingent would be to create inequality in the family groups. The blood of Hugh, the son, would then take one-third part and the blood of Mrs. Goodman would then take two-thirds part.

The testator regarded his grandchildren as a family group. He referred to them by name as definite objects of his bounty and it is to be concluded that the interests were vested. They took

descendible and devisable estates, subject only to the trust terms, and subject to divestiture by dying within the trust term leaving issue. They received as tenants in common.

This ruling is consonant with the canon of construction which tends to effect equality, and is to be preferred over one producing , the opposite result. (*Matter of Harden*, 177 App. Div. 831, 835; affd., 221 N. Y. 643; *Matter of Berbling*, 134 Misc. 730, 732; *Matter of Balsamo*, 136 id. 113, 115, 116; *Matter of Stulman*, 146 id. 861, 878.)

If held contingent, and if all the grandchildren should die without leaving issue, intermediate the trust, the testator would die intestate. The vesting of these remainders, subject to being divested upon the survival of issue, prevents this occurrence. This interpretation prevents any possibility of there being an intestacy as to any of the remainders of the trust.

The family relationship, the equality of gifts, the rules for the construction of wills, and the expressed intention of the testator, the whole will being considered, cause the court to decide that the grandchildren took at the date of the death of the testator vested remainders in the Goodman trust, subject to the trust term for Mrs. Goodman, and further subject to divestiture on their dying before Mrs. Goodman, leaving issue. I hold that the two-sixths of the remainder interest in the Goodman trust vested in Hugh S. Jarvis, Jr., immediately on the testator's death, and I further hold that such remainder interest passes in possession and enjoyment upon the death of Mrs. Goodman to his representatives.

We will now turn to the residuary trust. Here, too, as in the Goodman trust, the gift to grandchildren is found in the direction to trustees to hold, and pay, and distribute income and principal.

What effect, if any, has the substitutionary clause in article X upon the residuary trust? Up to the time the draftsman inserted such clause, there would have been a vesting of the principal of the trust in the four named grandchildren. In the latter part of the clause the testator directs that the share of a child dying *without* issue before distribution shall be added to " my residuary estate." It may be said that by its terms this applied only to the Goodman trust. If this is true, then the only provision in the residuary trust is with respect to the death of a beneficiary leaving issue. The unskilled draftsman attempted to make an impossible addition by adding residuary to residuary, by adding same to same, by adding something that was already in the residuary estate, causing the language of the latter part of the substitutionary clause to be confusing and contradictory. When the draftsman causes the testator to use inept terms in such numerous instances it is difficult

to understandingly interpret his varying modes of expression. This part of the clause should not be given the effect of limiting the estate created with regard to the residuary trust. Where an estate has been given in an earlier part of the will and it is clear and definite, construction will not give a strained and unnatural effect to the language occurring in other paragraphs in order to cut down or impair the integrity of the gift where the subsequent language is not definite and certain but, on the other hand, is doubtful and ambiguous. (*Matter of Barney*, [4th Dept.] Justice DAVIS writing, 207 App. Div. 25, 27; affd., 239 N. Y. 584; 1 Davids Wills, § 495; 2 id. § 807.)

The latter part of the substitutionary clause, so far as it may refer, if at all, to the residuary trust, is indefinite, inconsistent and repugnant to the words of absolute gift and should be wholly disregarded. (*Tillman* v. *Ogren*, 227 N. Y. 495; *Matter of Rooker*, 248 id. 361, 364; *Matter of Wiley*, 111 App. Div. 590 [dissent in this case was concurred in, 188 N. Y. 579]; *Matter of Martin*, 225 App. Div. 502, 506; *First Nat. Bank & T. Co.* v. *Palmer*, 235 id. 593, 598; *Matter of Baker*, 146 Misc. 296, 298, 299; *Matter of Sutton*, 150 id. 137; *Matter of Lutz*, 122 id. 336; 2 Davids Wills, §§ 807 and 810; 2 Jessup, § 933-a.)

With the elimination of the latter part of the substitutionary clause, so far as it may affect the residuary trust, we are left with a gift of the residuary estate to run until two of the grandchildren shall have reached the age of twenty-one or sooner die, with the income to be paid and distributed to the grandchildren for the trust term. Article XIV provides for possible accumulation of income for grandchildren. The gift of income prior to possession reflects the testator's intention with regard to vesting. (2 Davids Wills, § 962; 1 Jarman Wills, 802; *Dickerson* v. *Sheehy*, 209 N. Y. 592, 597; *Cammann* v. *Bailey*, 210 id. 19.) The same canons of interpretation apply here as heretofore stated with regard to the Goodman remainders.

The testator had no intention to die intestate. He has said so. This is clearly shown in the first part of article X creating the residuary trust, when he includes in the trust all property *attempted to be disposed of*, " the disposition of which by reason of lapse or other cause shall fail to take effect." An interpretation that will result in intestacy as to any part of an estate is to be avoided if possible. (*Matter of Hayes*, 263 N. Y. 219, 225.)

The views adopted here prevent an intestacy according to the fundamental rules of construction. An attempt to die intestate is not to be lightly inferred. There is no need of applying the presumption against intestacy. (*West* v. *West*, 215 App. Div. 285.)

There is plain evidence within the terms of the will that the testator did not intend to die intestate.

With regard to Hugh S. Jarvis, Jr.'s, interest in the residuary trust, I hold that he took a vested interest in two-sixths of such trust, subject to being defeated by his dying before the expiration of the trust term, leaving issue. He died without issue and the vested estate became absolutely vested and passes to his administrator.

Submit decree with notice to attorneys appearing.