In the Matter of the Construction of the Last Will and Testament of ALICE HALL BRIGGS, Deceased.

JOHN LYNDE BRIGGS and Others, Appellants; MARY LOUISE EDWARDS and Others, Respondents.

Third Department, December 28, 1917.

**Will — construction — intent of testatrix — when surviving husband, who is life beneficiary, executor and trustee, is not absolute owner of principal of estate — authority to use principal — power of surrogate to construe will and determine rights of parties thereunder.**

A testatrix, being about sixty years of age and her husband five years older, left the use of her house and contents to her mother for life, with remainder to her husband if living, and left the remainder of her property in trust for the benefit of her mother for life, and upon the death of the mother

to trustees in trust to invest the same and pay the income to her husband for life, and further directed "that he use during his life as much of the principal of my estate as, in his judgment, is necessary and proper, and that he in no way be held liable or accountable for such principal so used." Upon the death of the husband and mother the principal remaining was to be paid to several legatees. The husband and another were appointed executors and trustees, and it was provided that each one should "be held liable for his own acts but not for the acts of the coexecutor, and I further direct that neither of my said executors or trustees be held liable or responsible except for gross negligence." After the mother's death, a codicil was made, reciting the death and giving to the husband absolutely all the real estate, otherwise confirming the will. Provisions of the will examined, and

*Held,* that the testatrix had no intent to give the property absolutely to her husband and take it away from those whom she had named as residuary legatees;

That the will is fairly satisfied if the power to use the principal remains in abeyance while the husband has property of his own outside of the house and contents which may be applied to meet his personal requirements, or while he has ample income.

The husband having taken from the estate a certain amount of principal under a claim that he owned the entire estate, the surrogate has power to make a decree construing the will and determining the rights of the parties thereunder.

APPEAL by John Lynde Briggs and others from parts of a decree of the Surrogate's Court of the county of Saratoga, entered in the office of said Surrogate's Court on or about the 25th day of September, 1917, construing the last will and testament of Alice Hall Briggs, deceased.

*Edgar T. Brackett,* for the appellant John Lynde Briggs.

*Butler, Kilmer & Corbin* [*W. P. Butler* of counsel], for the appellants Saratoga Hospital and others.

*John L. Henning* [*Edward D. Eddy* of counsel], for the trustee, petitioner.

*Slade, Harrington & Goldsmith* [*John A. Slade* of counsel], for the respondents Mohawk and Hudson River Humane Society and others.

*John A. Slade,* for the respondents Hurlbut and others.

*George S. Van Schaick,* for the respondent Louise E. Parsons.

*Harold C. Beatty,* for the respondents John Franklin Durston and others.

*H. P. Pendrick,* for the respondent First Baptist Church.

*Corliss Sheldon,* for the respondent Mary L. Edwards.

KELLOGG, P. J.:

The surviving husband, who is the life beneficiary, an executor and also trustee under the will, contends that the decree is erroneous in determining that he is not the absolute owner of the principal of the estate. The petitioner, the other executor and trustee, and the remaindermen contend that the decree improperly states the power of the husband to use the principal.

The will was made under the following conditions: The testatrix and her husband were living at Saratoga Springs; she owned real estate worth about $25,000, and had about $143,000 of personal property, the income of which was about $6,000. The will was made December 18, 1911; she was then about sixty years of age and he about sixty-five. They were engaged in no business, were childless, and were evidently living upon and within their income. Their habits of life and manner of living were fixed, and it was not probable that at their time of life there would be any material change in their habits or method of living. The will, in substance, gives: (1) $300 for the care of the cemetery lot; (2) the use of the house and the household goods and effects therein to her mother for her life and upon her death to the husband, if living; if he is not living they fall into the residuary estate; (3) the remainder of the property to the trustees named, in trust to pay the income to the mother quarterly during life; (4) upon the death of the mother to the trustees, " in trust to invest the same and change investments, and to pay the net interest or income thereof to my said husband John Lynde Briggs, quarterly during his life. I further direct that he use during his life as much of the principal of my estate as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used;" (5)

upon the death of the husband and mother, the principal remaining is to be paid, $5,000 to each of ten cousins; $8,000 for the maintenance of a room in the Saratoga Hospital; $5,000 to the Young Men's Christian Association; $5,000 to the First Baptist Church; and $500 to the Humane Society. The rest of the property, after the payment of the specific legacies, is divided into six shares which go to relatives. (6) The executors and trustees are to convert the real estate not specifically devised into money, as to them seems best, and to rent it and keep it in repair until sold. The eighth item appoints her husband and Edward D. Eddy, or the survivor, executors and trustees, and continues: " and I direct that each of my said executors and trustees shall be held liable for his own acts, but not for the acts of the co-executor, and I further direct that neither of my said executors or trustees be held liable or responsible except for gross negligence."

Four years later, her mother having died, a codicil was made reciting the death of the mother and giving to her husband absolutely all her real estate, otherwise confirming the will.

The contention of the husband, in part at least and perhaps to quite an extent, is that he became the owner, not because the will foreshadows such an intent, but that the language employed, perhaps in spite of the intent, necessarily brings about such a result. His contention is pretty well answered by *Matter of Ithaca Trust Co.* (220 N. Y. 437) where the power of disposition was much broader. In that case the testator by his will gave his property to be equally divided between his wife and mother. By a codicil he directed that the one-half given to the mother by the will " shall be hers absolutely to use up, spend or give away, in any way she sees fit, but I will and direct, in the event there is any of the property hereby willed to her left and undisposed of by her at the time of her death, that sum or amount of property thus willed to her shall belong to my said wife, Mary A. Simpson, providing she shall be living at that time, and, as thus modified I hereby confirm my said will in all respects."

The court says that if the gift to the mother was intended to be absolute, the provision to the wife was without force; but determines that the testator did not intend to give an

absolute fee to the mother, and that upon her death the widow, under the husband's will, and not the beneficiaries under the will of the mother, took the unexpended balance of the estate, saying: " The testator's intention to restrict the gift to his mother to a life estate with power of disposition in her life is not contrary to law. * * * It is apparent that the testator intended to provide quite unreservedly for his mother in her lifetime, and it is also apparent that, subject to the provision for his mother during her lifetime, the testator desired to add to the provision for his wife any remainder of the gift to his mother that she did not actually use up, spend, give away or dispose of prior to her death."

The question then is — what was the intention of the testatrix with reference to the gift to her husband? That intention must be spelled out from the will itself, applied to the conditions existing when it was made.

" The intention of the testator being reasonably clear it is quite unnecessary to discuss the decisions made in other cases involving the vesting of property held in trust. Rules for the construction of wills are for the sole purpose of ascertaining the intention of the testator, and if the intention is clear and manifest it must control, regardless of all rules that have been formed for the purpose of determining their construction. (*Roosa* v. *Harrington*, 171 N. Y. 341; *Matter of Tienken*, 131 N. Y. 391; *Robinson* v. *Martin*, 200 N. Y. 159; *Matter of James*, 146 N. Y. 78.) " (*Cammann* v. *Bailey*, 210 N. Y. 30.)

The provisions for the residuary legatees, the trusteeship, the directions to collect the rent and pay the income to the husband, his liability for gross negligence, the directions in the will that the trustees sell the real estate and invest the proceeds, the codicil and in fact the whole tenor of the will make it clear that the testatrix had no intent to give the property absolutely to the husband and take it away from those whom she had named as residuary legatees.

It is urged that the provision " that he in no way be held liable or accountable for such principal so used " indicates an intent to give an absolute and unrestrained power of disposition and leaves no one in a position to question him. If the principal is " so used;" that is, if it is used fairly within

the power given by the will, he is not accountable; but there is nothing saying that his acts cannot be questioned if he goes beyond the power given him.

What then did the testatrix intend, after directing the trustees to pay the income to him quarterly, by saying: " I further direct that he use during his life as much of the principal of my estate as in his judgment is necessary and proper? "

In construing the will we must give reasonable effect to all of its provisions, so far as may be. The duty cast upon the husband by making him trustee for the remaindermen is just as binding upon him as the right upon his part to use the principal is binding upon the *cestui que trustent;* neither creates an absolute unqualified right or duty in itself, but the right conferred and the duty enjoined are to be determined by finding the meaning of the instrument in its entirety.

The meaning of the words " necessary and proper " in the will must be determined by considering the respective rights and duties of all the parties and the evident intent of the testatrix. The necessity evidently relates to his personal wants, compared with his means, income and position in life; the propriety evidently calls for consideration of the fact, with others, that he, the trustee, may seek to use some of the principal given to his *cestui que trustent.* The exercise of the power depends upon an honest judgment on his part that his wants, under all the circumstances then existing, make it necessary and proper for him to use for his own benefit the property which was intended under ordinary circumstances for them. In determining his rights under the power we must not forget his duties as trustee. Nevertheless, the strict duties of a trustee were not imposed upon him with reference to the exercise of this power. The fact that the power rests in him alone, and not with both trustees, is significant. The testatrix probably considered that the cotrustee, an attorney, might take too technical a view of the duties of the trustees, while she intended to make the exercise of the power free and open so as to provide fully for the husband's personal wants. We must, therefore, consider that the power is to be exercised by the husband, a trustee, but that his duties are qualified by the evident

Third Department, December, 1917.        [Vol. 180.

intent of the testatrix that the power should be liberally
exercised to cover his needs.

The judgment upon his part must be an honest judgment.
Arbitrarily or willfully saying that he deems it " necessary
and proper " has no force.   He cannot with reason say that he
deems it " necessary and proper " unless there is some basis
for such judgment — some facts which call for a decision.
His coexecutor or the court are not to overrule his honest
judgment, but either may require an honest determination by
him.   He is exercising a power which it was intended he
should exercise only under unusual circumstances not then
foreseen.   The existence of some such circumstance, some
changed condition, tending in a way to show that it is neces-
sary and proper for him under all the conditions to use some
part of the principal, are necessary as a basis for his action in
that respect, and upon such basis his honest judgment con-
trols.   (*Hawver* v. *Bell*, 19 N. Y. Supp. 612; 141 N. Y. 142;
*Colton* v. *Colton*, 127 U. S. 300.)

The testatrix did not intend to limit the use of the principal
to mere support and maintenance.   By giving absolutely
to the husband the income only she evidently deemed that
sufficient for his use under ordinary circumstances.   But she
also intended to meet all possible contingencies.   She knew
that some of the investments might go wrong; the cost of
living might greatly increase, or protracted sickness and
helplessness might entail very large expenses.   Therefore, as
a matter of prudence, and in order to make him independent
under all circumstances, she permits, upon the conditions
named, the use of principal.

His necessity for the use must be such that there is a pro-
priety in using such funds for that purpose.   She not only
wanted him supported and maintained, but wanted no doubt
that his declining years should be spent comfortably, that his
method of living should not change for the worse and that he
should be at liberty to use principal if necessary for his personal
use, comfort and benefit.   Testatrix did not intend that he
must sell the residence and the property therein; neither did
she intend that he should retain the income she gave him
and use the principal of the estate for his personal needs,
or that he should save the principal of the property which

she had given him absolutely, aside from the house, and use the property of the *cestui que trustent* in place of it. Manifestly, at his time of life and in his condition, he cannot deem it necessary and proper to use the funds of his *cestui que trustent* while retaining ample means of his own to meet his personal requirements. The will is fairly satisfied if the power to use the principal remains in abeyance while he has property of his own, outside of the house and contents, which may be applied to that purpose, or while he has ample income. She did not mean that he should found a great charity, give the principal to others or give away his property and live upon the principal of her estate, or that he should so manage that her property should go to his family and friends rather than to her's. He was not to make her will; she was making it for herself, disposing of her property in her own way. These, and similar purposes, would not seem to her a ground for the husband to determine that it was necessary and proper to use the principal of the estate.

The title, possession and control of the principal are in the trustees jointly. They are to collect the income and pay it to the husband quarterly. The permission to him to use principal does not change that condition. It means that a portion of the principal, under the conditions stated, may be paid over to him for such use. If his coexecutor refuses to comply with his reasonable request in that respect, there is ample remedy to compel such compliance.

The husband has taken from the estate $6,000 of principal under a claim that he owns the entire estate. He had no right to take it under such claim. The cotrustee feels that such action and such claim are unwarranted and that the interests of the estate require that the will be construed and the rights of the parties thereunder determined so that the trustees may carry out the will according to its fair intent and meaning. We conclude the surrogate has power, under the circumstances, to make the decree.

The decree should be modified by striking therefrom the provision: " That the title of said trust is, nevertheless, subject to and may be terminated by the lawful exercise of a valid power of disposition conferred upon said J. Lynde Briggs, individually, in the following language, ' I further direct

that he (J. Lynde Briggs) use during his lifetime as much of the principal of my estate as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used,' " and, as so modified affirmed, with a separate bill of costs to each party appearing and filing a brief, to be paid from the estate.

All concurred.

Decree modified by striking therefrom the provision: " That the title of said trust is, nevertheless, subject to and may be terminated by the lawful exercise of a valid power of disposition conferred upon said J. Lynde Briggs, individually, in the following language, ' I further direct that he (J. Lynde Briggs) use during his lifetime as much of the principal of my estate as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used,' " and as so modified affirmed, with a separate bill of costs to each party appearing and filing a brief, to be paid from the estate.