In the Matter of the Construction of the Last Will and Testament of AMANDA M. JOHNSON, Deceased.

Surrogate's Court, Clinton County, November 1, 1924.

**Wills** — construction — provision in will set aside three separate trust funds, income of which was to be paid to each of testatrix's three children annually, and in discretion of executors, additional amount was to be paid from principal should beneficiaries need it for " care, support or maintenance on account of sickness or any other cause " and for educational needs of beneficiaries' children — principal of trust fund not to be expended for any purpose unless beneficiaries should need it for " care, support or maintenance on account of illness or any other cause " or education of beneficiaries' children — words " any other cause " deemed not to authorize trustees to pay to beneficiaries any or all of principal of trust funds for purpose other than for their care, support or maintenance or education of their children — beneficiaries may not use any of principal of trust funds until their income, earnings and other property are in such condition that they will be compelled to resort to principal of trust funds — trustees should consider value of individual property of beneficiaries and probable net income therefrom in exercising their discretion as to whether any part of principal should be paid beneficiaries — concurrence of all trustees required where their acts on behalf of estate call for exercise of discretion and judgment — trustees required to file accounting annually pursuant to Surrogate's Court Act, § 253.

Under a will creating three separate trust funds, the income of which is to be paid to each of the three children of the testatrix annually during their natural life and an additional amount from the principal of the trust fund, " in the discretion "

of the executors should either of the three children need " it for care, support or maintenance on account of sickness or any other cause " and also for the education of any of their children, the principal of the trust funds should not be expended for any purpose other than the care, support and maintenance of the beneficiaries of the trusts, and then only in case they need it for such purpose or for the education of their children.

The phrase " any other cause " is but another way of enumerating the various conditions or circumstances of the beneficiaries, other than their " sickness " that may arise and necessitate the use of the principal of the funds for their care, support or maintenance, or for the education of their children.

The trustees are not authorized to pay to the beneficiaries any or all of the principal of the funds other than for the purposes specified.

The beneficiaries may not use any of the principal of the funds until their income, earnings and property are in such a condition that they will be compelled to resort to the principal for their support, care and maintenance. Furthermore, the trustees should consider the value of the individual property of the beneficiaries and probable net income therefrom in exercising their discretion as to whether any of the principal of the trust funds should be paid to the beneficiaries.

The concurrence of all the trustees is necessary in the administration of the trust, where their acts call for the exercise of discretion and judgment.

Pursuant to the authority vested in the Surrogate's Court by section 53 of the Surrogate's Court Act, the trustees of the respective trust funds are directed to file annually with the court reports of the custody, investment and disposition of said trust funds.

PROCEEDING for construction of a will.

*Victor F. Boire,* for the petitioner Henry S. Johnson.

*Kenneth H. Holcombe,* special guardian for infant remaindermen.

*Wallace E. Pierce,* for Robert I. Johnson, Corral W. M. Johnson and Seba M. Lewis, *cestuis que trust.*

HARRINGTON, S. The petitioner prays for the judicial construction of the will of Amanda M. Johnson, deceased. The will is dated January 27, 1921. Testatrix died September 12, 1923, and her will was duly admitted to probate on September 25, 1923. Henry S. Johnson, the petitioner, and the testatrix's three children Robert I. Johnson, Corral W. M. Johnson and Seba M. Lewis, were nominated as executors and trustees under the will. They were duly appointed as such executors. The final account of the executors shows the net estate of the testatrix to be $169,143.15, from which are to be deducted the commissions of the executors. Pending the entry of an order settling and allowing the account of the executors as filed, this proceeding was brought by petitioner, the petition alleging among other things that no final decree for the distribution of the funds of the estate could be made until the will was construed by this court.

Paragraph marked " first " of the will directs the payment of debts and funeral expenses, bequeaths a watch and chain to Seba

Surrogate's Court, Clinton County, November, 1924. [Vol. 123

M. Lewis, testatrix's daughter, and the sum of $100 to each of testatrix's grandchildren.

Paragraphs marked " second " and " third " of the will read as follows:

"*Second.* I give and devise my farm in the town of Schuyler Falls, Clinton County, New York, now occupied by my son Robert I. Johnson to my said son Robert at four thousand dollars ($4000.00) and to my daughter Seba M. Lewis four thousand dollars ($4000.00) and to my son Corral W. M. Johnson four thousand dollars ($4000.00)."

"*Third.* I give and bequeath to my Executors Henry S. Johnson, Seba M. Lewis and Corral W. M. Johnson, hereinafter named, in trust, the sum of twenty five thousand dollars ($25000.00) to invest and keep invested in bonds and notes secured by mortgage and trust deeds of improved real estate in this and other states of the United States, and to pay my son Robert I. Johnson annually during his natural life the interest and income received upon the same and an additional amount from the principal, in the discretion of said Executors in case my son Robert needs it for care, support or maintenance on account of sickness or any other cause and also if any of his children need it for his or her education. Upon the death of my said son Robert I give and bequeath said trust fund held in trust for him to his children to be divided among them equally."

Paragraph marked " fourth " provides a trust fund for Seba M. Lewis of the same amount and for the same purpose as is provided for Robert I. Johnson in paragraph marked " third " of the will, as above quoted; the only difference being that Henry S. Johnson, Robert I. Johnson and Corral W. M. Johnson are designated as the trustees of this trust fund.

Paragraph marked " fifth " of the will provides a trust fund for Corral W. M. Johnson of the same amount and for the same purpose as is provided for Robert I. Johnson in paragraph marked " third " of the will, as above quoted; the only difference being that Henry S. Johnson, Robert I. Johnson and Seba M. Lewis are designated as the trustees of this trust fund.

Paragraph marked " sixth " of the will provides as follows:

"*Sixth.* All the rest and residue of my estate both real and personal including the promissory notes made by my son Robert and held by me, I give, devise and bequeath to my three children Robert, Seba and Corral to be divided among them equally share and share alike, the said notes to form a part of my son Robert's share, and in case I hold any promissory notes made by my daughter Seba & Son Corral the same to form a part of her & his share."

It would appear that after deducting the legacies to the grand-

children and the commissions of the executors, each of the three children of the testatrix will receive outright approximately $27,000, aside from the income on a trust fund of $25,000.

The petitioner seeks a construction of the will in regard to the three separate trusts as heretofore mentioned and asks the court to determine, *first*, whether the discretion of the trustees in paying to the *cestuis* any of the principal of the trust funds is limited to such facts or circumstances as indicate that the *cestuis* " need " some or all of the principal for their care, support or maintenance or for the education of their children; or whether the words " any other cause " authorize the trustees in their discretion to pay to the *cestuis* any or all of the principal of the trust funds for purposes other than the care, support or maintenance of the *cestuis* or the education of their children; *second*, if the trustees are limited in their discretion in paying any of the principal to the *cestuis* to such facts or circumstances as indicate that the *cestuis* " need " some or all of the principal for their care, support or maintenance or for the education of their children, whether the *cestuis* must first expend their own property before the trustees are authorized to allow them to draw upon the principal of the trust funds for such use; and *third*, whether the trustees must act unanimously, or by a majority only, in exercising the discretion thus vested in them.

No evidence was offered by any of the interested parties for the purpose of showing any facts or circumstances from which the intent of the testatrix, as to the meaning of the language in question, might be implied. It is proper to allow extrinsic evidence as to surrounding circumstances and conditions of the testatrix and the subject of her bounty to aid in the construction of her will. *Brown v. Quintard*, 177 N. Y. 75, 83; *Furniss v. Cruikshank*, 230 id. 495, 501; *Ely v. Ely*, 163 App. Div. 320; affd., 219 N. Y. 112. As no such evidence was offered, presumably none existed which would tend to conflict with the plain purport of the language of the will. At any rate, we must gather the intention of the testatrix from the language used in the will, and if that intention is clear and manifest it must control regardless of all rules that have been formed for the purpose of determining the construction of wills. *Cammann v. Bailey*, 210 N. Y. 19, 30, and cases there cited.

There appear to be no cases of record where the language of the will is the same as that of the will in question. This is only another illustration, often referred to by the courts, that no two wills are alike, and that each must be construed from the language used in the particular will. It would seem that the plain purport of the language of this will indicates that the principal of the trust funds is not to be expended for any purposes other than the care, support

Surrogate's Court, Clinton County, November, 1924. [Vol. 123

and maintenance of the *cestuis* and then only in case they " need " it for such purposes, or in case they " need " it for the education of their children. The *cestuis* are to receive the income from the trust funds in any event and an additional amount from the principal in the discretion of the trustees, in case said *cestuis* " need " it for their " care, support or maintenance *on account of sickness °or any other cause*," or for the education of their children. The *cestuis* would have the above-quoted clause read " care, support or maintenance, sickness or any other cause." The plain reading of the will does not so indicate and it would be quite improper to hold, in the absence of competent evidence to the contrary, that the intention of the testatrix was other than what the plain reading of the will indicates. The phrase " *any other cause* " is a mere short way of enumerating the various conditions or circumstances of the *cestuis*, other than their " sickness," that might arise which would necessitate the use of the principal of the trust funds for their care, support or maintenance, or for the education of their children.

The *cestuis* contend that the trustees are empowered to pay over any part of the principal of the trust funds to them upon presentation by them of facts showing the necessity for its use " *for any other cause*," other than their care, support and maintenance or the education of their children. Such a contention is not warranted by the language of the will. Had the testatrix desired such an intention to prevail, it would have been very easy for her to have expressed it. In fact, if her intention was as is now maintained by the *cestuis*, then she may as well have bequeathed direct legacies to the *cestuis* in the amount of the principal of their respective trust funds, for the result in either case would be the same.

It is urged on behalf of the *cestuis* to uphold their contention that the principal of the trust funds may be paid to them for " any cause," that the intent of the testatrix was to make a gift to her children, to be passed on in turn to their children; that she was not attempting to create a direct legacy to her grandchildren; that to hold that the *cestuis* could not use the principal of the trust funds for " any cause " would tend to establish the intent of the testatrix as being to make a direct legacy to her grandchildren; that this would show an intent to discriminate against her grandchildren, when no cause for such discrimination existed, for at testatrix's death, Robert I. Johnson's children, numbering five, would receive $5,000, Seba M. Lewis's children, numbering two, would receive $12,500 each and Corral W. M. Johnson's children, numbering one, would receive $25,000. An erroneous hypothesis is quite apt to lead to a wrong conclusion. Because the *cestuis* cannot use the principal of the trust funds for " any cause," it does not follow that

the principal of the trust funds are to be considered direct legacies to the testatrix's grandchildren. Whether the grandchildren will ever directly take any of the principal of these trust funds will not be known until the decease of the respective *cestuis*. The *cestuis* pursue different walks of life. It may be that the future conditions of some of them may necessitate the expenditure of the principal of their trust funds for their care, support or maintenance, or for the education of their children. The principal of the trust fund of some or all of the *cestuis* may for such reasons be entirely expended prior to their decease; but even so, the intent of the testatrix has been carried out, in that the expenditures have been for the care, support and maintenance of her own children, or for the education of her grandchildren. In holding that the expenditure of the principal of the trust funds may be made only for the care, support or maintenance of the *cestuis*, or for the education of their children, regardless of the conditions and circumstances of the *cestuis* which may make this necessary, the fact that at the death of the testatrix the number of the children of each *cestuis* differed, in no way imputes an intent on the part of the testatrix to discriminate against her grandchildren. The trust is a gift for the testatrix's own children, in that the *cestuis* are given the income therefrom in any event, and in case of " need," as much of the principal as is necessary for their care, support and maintenance, or for the education of their children. It is difficult to see how the testatrix could better have provided for the support and maintenance of her own children and the education of her grandchildren than by the language expressed in the three trusts. The testatrix set aside a like sum in each of these trust funds for her three children. At the respective deaths of the *cestuis* it may happen that the number of children survived by each is the same, or those who now have fewer children than others may have more at the time of their decease. Such events are of course problematical. The fact that at testatrix's death the number of the children of each *cestuis* differed in number is of no consequence in considering the question of whether the testatrix intended that the *cestuis* might use any or all of the principal of the trust funds " for any cause," or whether she intended that they should use it only in case of their " need," and then only for their care, support and maintenance or for the education of their children.

In determining, in their discretion, whether the *cestuis* " need " any of the principal of the trust funds for their care, support or maintenance, or for the education of their children, must the trustees consider the value of the individual property of the *cestuis* and the probable income therefrom? While, as heretofore stated,

Surrogate's Court, Clinton County, November, 1924. [Vol. 123

there appears to be no case of record in which the language of the will is exactly the same as in the case at bar, yet there are many cases of record where the language is very similar with respect to the restriction placed upon the use of the principal of the trust fund.

See *Matter of Niles*, 122 Misc. Rep. 17. Here, the son of the testatrix was given the use, income and control of one-fourth of her real and personal estate for his use and benefit during his life " and *if necessary* for his support & maintenance to use of the principal herein given and devised to him he may do so," with remainder over to the testatrix's grandchildren. The court interpreted the meaning of the words *if necessary* as meaning that the *cestui* could not use any of the principal of the trust fund until his income, earnings and his property should be in such a condition that he would be compelled to resort to the principal of the trust fund for his support and maintenance. Upon this matter the language of the court is as follows (p. 23):

" Now, what is the contingency? The contingency is that the condition, health and situation of Lynn Niles, his income, earnings and his property shall be in such a situation and state that he is compelled to resort to the principal of this fund for his support and maintenance. A discussion of what particular circumstances would entitle Lynn Niles to invade the principal or the extent to which he might invade it, would be purely academic at this time, for many circumstances which we cannot anticipate may so deplete his means and income as to make it necessary for him to resort to the principal for his support and maintenance, his property, business, the size of his family, his health, and his situation in life.

"As hereinbefore stated, under the 4th clause of the will, Lynn Niles became a trustee for the remaindermen of the fund which is subject to be invaded within the intention and purposes of the will and subject to the supervision, etc., of a court of equity during the continuance of the life estate.

" My conclusion is that Lynn Niles has no right to invade the principal until his circumstances are such that he is compelled to resort to the fund given in this will, and when the contingency happens, the amount of the trust fund which he may use from year to year depends upon his circumstances, his wants and needs. It is impossible at this time to determine what those circumstances may be in the various mutations of life. To hold that upon the payment to him of the fund, he is entitled immediately to use the principal of the fund for his support and maintenance, without reference to what his other means may be, might wipe out the fund in a very short period and leave nothing to pass to the grandchildren."

It would seem that the word " needs " in the case at bar would

place the same limitation upon the trustees in allowing, in their discretion, expenditures from the principal of the trust funds as was held to be placed upon the trustee in the case above cited by the words " *if necessary.*"

*Matter of Briggs*, 101 Misc. Rep. 191; mod. & affd., 180 App. Div. 752; mod. by striking out the modification of the decree of surrogate, and as so modified affd., 223 N. Y. 677.   Here the testatrix created a trust for her husband's benefit, appointed him and another as executors and trustees, the language of the trust providing " that he use during his life as much of the principal of my estate as in his judgment is necessary and proper, and that he in no way be held liable or accountable for such principal so used." It appears that the husband had withdrawn $6,000 from the principal of the trust fund and claimed a right to withdraw all of it and expend it for his own personal use.   In construing the meaning of the words " necessary and proper," the Appellate Division (at pp. 757–759) held:

" The meaning of the words ' necessary and proper ' in the will must be determined by considering the respective rights and duties of all the parties and the evident intent of the testatrix.   The necessity evidently relates to his personal wants, compared with his means, income and position in life; the propriety evidently calls for consideration of the fact, with others, that he, the trustee, may seek to use some of the principal given to his *cestui que trustent*. The exercise of the power depends upon an honest judgment on his part that his wants, under all the circumstances then existing, make it necessary and proper for him to use for his own benefit the property which was intended under ordinary circumstances for them.   *   *   *

" The judgment upon his part must be an honest judgment. Arbitrarily or willfully saying that he deems it ' necessary and proper ' has no force.   He cannot with reason say that he deems it ' necessary and proper ' unless there is some basis for such judgment — some facts which call for a decision.   His co-executor or the court are not to overrule his honest judgment, but either may require an honest determination by him.   He is exercising a power which it was intended he should exercise only under unusual circumstances not then foreseen.   The existence of some such circumstance, some changed condition, tending in a way to show that it is necessary and proper for him under all the conditions to use some part of the principal, are necessary as a basis for his action in that respect, and upon such basis his honest judgment controls. (*Hawver* v. *Bell*, 19 N. Y. Supp. 612; 141 N. Y. 142; *Colton* v. *Colton*, 127 U. S. 300.)

" * * * Testatrix did not intend that he must sell the residence and the property therein; neither did she intend that he should retain the income she gave him and use the principal of the estate for his personal needs, or that he should save the principal of the property which she had given him absolutely, aside from the house, and use the property of the *cestui que trustent* in place of it. Manifestly, at his time of life and in his condition, he cannot deem it necessary and proper to use the funds of his *cestui que trustent* while retaining ample means of his own to meet his personal requirements. The will is fairly satisfied if the power to use the principal remains in abeyance while he has property of his own, outside of the house and contents, which may be applied to that purpose, or while he has ample income. She did not mean that he should found a great charity, give the principal to others or give away his property and live upon the principal of her estate, or that he should so manage that her property should go to his family and friends rather than to hers. He was not to make her will; she was making it for herself, disposing of her property in her own way. These, and similar purposes, would not seem to her a ground for the husband to determine that it was necessary and proper to use the principal of the estate."

The above case is fully discussed in *Matter of Niles, supra*, 27–30. As therein stated, the Court of Appeals left the matter of the exercise of the discretion of the trustees subject to the supervision of a court of equity. But the language of the Appellate Division, as above quoted, would clearly indicate that the trustees could not allow the *cestui* to expend any of the principal without taking into consideration his own individual property and his income therefrom. The language of the court is particularly significant due to the fact that in this case the testatrix directed that the *cestui* might use the principal when in his judgment he deemed it necessary and proper. Again, the restriction placed upon the *cestui* from using the principal of the trust fund in the above-mentioned case is so similar to the restriction placed upon the *cestuis* in the case at bar that it would seem that the trustees in the case at bar should follow the instructions of the court in the above-mentioned case in exercising their discretion in allowing the *cestuis* to use any of the principal of the three trust funds.

*Peck* v. *Smith*, 183 App. Div. 336. Here the testator gave his wife the use of $20,000 for and during her natural life, with the right and privilege to use such part or portion of the principal thereof as to her should seem " meet and proper." He also gave her the income on certain real estate for life, with the privilege to sell the same, should she deem it " necessary." The court

held (p. 343) that the wife was limited in exercising her discretion as to the use of the principal of $20,000, or the proceeds from the sale of the real estate, in the same manner as the *cestui* was so limited in *Matter of Briggs, supra.*

There are cases where a *cestui* has been given the right under certain conditions to use the principal of the trust fund, in which the courts have held that the trustee need not consider the value of the individual property of the *cestui* and his probable income therefrom, in determining whether any of the principal of the trust fund should be paid to him. Such rulings, however, have been due to the fact of the particular language of the will and are in nowise contra to the cases above cited.

*Rezzemini* v. *Brooks*, 236 N. Y. 184. Here the testatrix created a trust fund for her son and directed that the income therefrom be paid to him during his lifetime, with remainder over. The will further provided as follows: " If the income from my estate shall be insufficient for the proper support of my said son, then in that event, I authorize and empower my said trustee to expend so much of the principal thereof as may be necessary for that purpose." The court held that the language clearly indicated that the son was to be supported and maintained, *first*, from the income so far as the same will suffice, and *second*, from principal in such amount as might be necessary in addition to income, to properly support and maintain him. The court further held that the income from the individual property of the *cestui* need not be expended for his support and maintenance before resort could be had to the principal of the trust fund; and this, because the only restriction placed upon the trustee in allowing the principal to be used by the *cestui*, was that the income from the trust fund should be *insufficient* for the proper support of the *cestui*. In the case at bar the trustees cannot allow the principal to be used unless the *cestuis* need it for their support, etc. See, also, *Matter of Ward,* 186 App. Div. 261, 262; *Holden* v. *Strong,* 116 N. Y. 471; *Matter of Allen*, 111 Misc. Rep. 93; affd., upon the opinion of the surrogate, 202 App. Div. 810. In all of these cases it will be found that the reason why the court held that the *cestui* might use the principal of the trust fund, without resort to his own property or the income therefrom, was because of the peculiar language of the will creating the trust. None of them are similar or applicable to the case at bar.

In the case at bar the trustees will consider the value of the individual property of the *cestuis* and the probable net income therefrom in exercising their discretion as to whether any of the principal of the trust funds should be paid to the *cestuis* for their

care, support or maintenance, or for the education of their children. It would be idle for the court to undertake at this time to define the circumstances or conditions hereafter affecting the *cestuis* which would justify the trustees in their discretion in allowing the *cestuis* to use part or all of the principal of the trust funds. All that can be done is to set forth the established principles of law which should govern them in the matter. The discretion of whether the facts and circumstances in each particular case as presented by the *cestuis* justify the use by the *cestuis* of any of the principal of the trust funds is left to the good judgment of the trustees, and is only reviewable by this court in case there is an abuse of such discretion. Where discretion is given to trustees in such a matter, the court will not interfere with the reasonable exercise thereof. *Matter of Hilton,* 174 App. Div. 193; *Ireland* v. *Ireland,* 84 N. Y. 321, 326; *Holden* v. *Strong,* 116 id. 471, 474.

It seems to be well established that where the acts of trustees call for exercise of discretion and judgment, the concurrence of all is necessary. *Cooper* v. *Illinois Central R. R. Co.,* 38 App. Div. 22, 28; *Fritz* v. *City Trust Co.,* 72 id. 532, 533; affd., without opinion, 173 N. Y. 622; *Matter of Ehret,* 70 Misc. Rep. 576, 579; *Matter of Dorland,* 100 id. 236, 241, 242. The rule is otherwise when ministerial duties only are to be performed. *Matter of Dorland, supra,* and cases therein cited.

As to the construction of the will in question, let the decree provide that the true construction is that the trustees of each of the three trust funds shall pay annually to the *cestuis* the income from their respective funds; that in addition thereto, the trustees shall pay to said *cestuis* such sums from the principal of the respective trust funds of the *cestuis* as may be necessary in the discretion of said trustees for the proper care, support or maintenance of said *cestuis,* or for the education of their children, the value of the individual property of the *cestuis* and the probable income therefrom to be considered by the trustees in the manner heretofore stated, in exercising their discretion as to the " need " for the use of such principal for the purposes herein mentioned; that in exercising their discretion in such matter the trustees must act unanimously.

Said decree shall further provide, pursuant to the authority vested in this court by section 253 of the Surrogate's Court Act, that the trustees of the respective trust funds shall file annually with this court reports of the custody, investment and disposition of the said trust funds, in substantially the same form as is by law required of general guardians of infants.

Decreed accordingly.