Third Department, June, 1945.
(June 29, 1945.)

In the Matter of the Will of William E. Woollard, Deceased.
Ernest B. Morris et al., Individually and as Trustees under the Will of William E. Woollard, Deceased, et al., Appellants; Harriet H. Woollard, Life Beneficiary, etc., et al., Respondents.

Memorandum by the Court. The testator left his residuary estate in trust and provided that the same should be invested by the trustees, and the income therefrom paid to, or applied monthly to the use of his widow during her lifetime, " together with as much of the principal or corpus of my estate as she may deem necessary for her maintenance comfort and well being (for which she shall not be required to make or file any account)  *  *  *."

The Surrogate has construed this language to mean that respondent widow has an absolute right in her discretion to demand and receive all or any part of the corpus of the trust which she deems necessary for her maintenance, comfort and well-being. We agree with this construction, subject of course to any debt that may be a lien against the residuary estate. Petitioners-appellants concede in their brief on appeal that any desire by said respondent expressed in good faith for her own well-being must be satisfied. Apparently it has been sought to make an issue of respondent's good faith. Without conceding that such an inquiry is relevant under the circumstances we nevertheless conclude that the Surrogate's construction and the decree appealed from are supported by the law and the facts.

Decree affirmed, with costs to respondent payable out of the estate.

Hill, P. J. (dissenting). Appeal by two of the three trustees named in the will of William E. Woollard, deceased, and by the special guardian, from a decree of the Albany County Surrogate's Court, dated December 22, 1944, which directed the trustees to pay the widow " from the income or principal of said trust estate, the sum of Twenty thousand Dollars ($20,000.00), in cash, within twenty (20) days after the service upon them of a copy of this decree, with notice of entry, and thereafter all of the income and so much of the principal of said trust estate as the said Harriet Holland Woollard shall from time to time demand,  *  *  *."

The will makes no legacy or devise except the trust fund here involved. It contains the statement that " Gifts heretofore or hereafter made by me shall not be regarded as advancements." And further, " I have otherwise, and to the extent I deem best, provided for the other natural objects of my bounty." Concerning the inheritance tax it is provided, " All inheritance and succession taxes levied by any jurisdiction on my estate or any interest passing under this Will shall be paid out of my residuary estate." All of the testator's property, after payment of debts, was devised and bequeathed to the three executors

and trustees named in the will, two daughters, Mrs. Morris and Mrs. Williamson, and the son-in-law Mr. Morris. The trustees are directed " To invest and reinvest the same and, during her lifetime, pay to or apply to the use of my beloved wife Harriet Holland Woollard the income thereof monthly, together with as much of the principal or corpus of my estate as she may deem necessary for her maintenance comfort and well being (for which she shall not be required to make or file any account) and upon her death to pay the remainder of my estate, of every name or nature, in equal shares, unto my daughters, Elizabeth Woollard Morris and Alice Holland Woollard Williamson, and my son in law Ernest B. Morris  *  *  *." Then follow directions in the event any of the remaindermen have died.

On the 4th day of November, 1943, the executors filed their accounts and during the month following they were finally judicially settled and allowed, the decree reciting that there was a balance of $235,367.23 which, after deduction of commisssions and allowances and the setting up of $3,000 against a negligence case pending against the estate by a third person, was to be turned over to the executors as trustees. The cash item was $14,491.86, the remainder being real estate, stocks, bonds, mortgages and five relatively small accounts receivable. The decree recites concerning the failure to reduce the assets to cash: " It appearing to the satisfaction of the court from the consent in writing of Harriet H. Woollard, Ernest B. Morris, Elizabeth W. Morris and Alice H. W. Williamson, filed in this court on December 23rd, 1943, pursuant to Section 268 of the Surrogate's Court Act, that such persons, they being all the persons interested in the estate herein, have consented to accept the property hereinafter set forth, in lieu of the money value of the property, at the price and value set opposite each said article of property, of payment, in part, for the amount due them, it is

" Ordered, Adjudged and Decreed that the accounting parties deliver, convey and assign, as the case may be, to themselves as trustees of the trust created by and under the Will of the decedent herein, the following described property, at the values hereafter stated,  *  *  *."

The decree further recites that the estate had borrowed $159,511.16 from the three executors and trustees, that it had not been repaid and was to " be continued as a debt of the Trust created by the Will of decedent herein and that the money and property which is directed by this Decree to be paid over and delivered by the accounting parties to themselves as Trustees of the trust created under and by the Will of decedent herein be made subject to said amount, it is

" Ordered, Adjudged and Decreed that the sum of $159,511.16 be continued as a debt of the trust created under and by the Will of the decedent herein and that the money and property, as above set forth, hereby directed to be paid over, delivered, conveyed and assigned by the accounting parties to themselves, as Trustees of the trust created under and by the Will of the decedent herein, be and the same hereby is subject to the sum of $159,511.16, which is due the accounting parties, as individuals,  *  *  *."

The money for which the above debt is owing was used to pay a portion of the inheritance taxes. The loan by the three executors was made under the following circumstances: The widow was the beneficiary under life insurance policies upon the life of the testator aggregating $172,536.11. This amount, with interest, was turned over to the three trustees, upon their agreement to

pay to her annually $10,615. This, it was stated, was the annuity which a life insurance company would have paid to her upon receipt of a like sum. The agreement as to the annuity is in writing and an exhibit in this proceeding.

The widow is the owner of an estate, in part at least, real property given to her by her husband prior to his death. The same seems to be true as to each of the children, and it is obvious from the amount of the inheritance tax ($167,269.34, in part paid from the loan earlier mentioned) that all or a portion of these gifts were subject to an inheritance tax.

This proceeding was commenced by one of the trustees in March, 1944, by petition to the Albany County Surrogate's Court asking for a determination of the meaning of the trust. In the previous month, the widow had written the trustee two letters, in part as follows: "In pursuance of our conversation of yesterday I hereby request that the trustees of the Estate turn over to me as soon as conveniently possible the sum of forty thousand dollars, half of which is for past periods and half of which is for the current period."

"I would appreciate it if you could send to me the following:

| | | | | |
|---|---|---|---|---|
| 5 | $5,000 Series G U. S. Savings Bonds | | | $25,000 |
| 3 | 1,000 " " " " " " | | | 3,000 |
| 1 | 500 " " " " " " | | | 500 |
| 5 | 1,000 Series E War Savings Bonds | | | 3,750 |
| | (All above in name of myself alone) | | | |
| 2 | 3,875 Cash Drafts | | | 7,750 |

Total .................................................$40,000 "

The answer which the widow made to the trustee's petition contains the following: "SIXTH: Respondent herewith amends her demand, heretofore made on the Trustees of the estate of William E. Woollard, deceased, for certain securities and cash specified in Paragraph '7' of the petition herein, totalling Forty thousand Dollars ($40,000.00), by reducing her demand to Twenty thousand Dollars ($20,000.00) per annum from the income and principal of the estate of said William E. Woollard to be paid to respondent annually, on demand, for her maintenance, comfort and well-being, and demands that said sum of Twenty thousand dollars ($20,000.00) be paid to her in cash or Government securities of any issue now held by the Trustees, or in any other kind of property now held by the said Trustees belonging to the estate of said deceased."

It appears that the executors, in compliance with the decree of December, 1943, had paid out for commissions and allowances $18,948.61, and were holding $3,000 against the lawsuit earlier mentioned, leaving the amount turned over to the trustees $213,427.62, all being property in kind except $14,491.86 cash, and that after deducting the debt of $159,511.16 there remained in the trust only $53,916.46.

Prior to April, 1944, when the account was made up to accompany the petition in this proceeding, the widow had received, or there had been paid on her account, including the $10,615 annuity, $73,754.66, and there was available of income which unquestionably passed to her under the trust, $4,449.02. Included in the payment to her were notes owing to the estate by one of the children, Robert, which, it is stated, were delivered upon her request, by agreement.

The widow was asked this question, "when you and the Judge were maintaining a home? When you were spending your winters in Europe and Florida, your springs and summers in Virginia, and so forth. In your opinion how much did it cost to maintain your standard of living while the Judge lived? A. Well, I would say it cost about $35,000 a year." But, she is now living alone, except for day help, and believes that she should receive $20,000 a year for her "maintenance comfort and well being". She had received $500 a month from her husband to maintain the home and for her expenses, which she says was increased when necessary.

In construing this will, it must be determined whether an absolute gift for the widow's support and maintenance is made. If so, her private income is not to be considered. The will directs that the trustees "pay to or apply to the use of my beloved wife Harriet Holland Woollard the income thereof monthly, together with as much of the principal or corpus of my estate as she may deem necessary for her maintenance comfort and well being  *  *  *."

The legacy is of income "together" with principal to the amount that the widow deems necessary for her maintenance, comfort and well-being. This seems an absolute gift of support and maintenance and not a gift of income with the direction that principal may be used in case of need. Thus, she may look to the trust so long as anything remains for her entire maintenance. (*Matter of Martin,* 269 N. Y. 305.) She may not require that principal be used for purposes other than her maintenance, comfort and well-being. (*Matter of Briggs,* 180 App. Div. 752, mod. 223 N. Y. 677.) The amount which the beneficiary may require presents a question for judicial determination. (*Matter of Martin, supra.*)

At this time there is only about $53,000 in the trust, according to the valuation fixed in the December, 1943, decree, which was apparently made on consent. The trustees hold property estimated at about $213,000 "subject" to a lien of a debt of nearly $160,000. If the decree appealed from is to be affirmed, $20,000 or about two fifths of the entire corpus is to be paid at once to the widow beneficiary, and the remainder at any time when she may demand it. The earlier decree is the law of this case, and there should be such a marshalling of the assets, together with a discharge of the lien of the debt as will permit payments to be made for the widow's support. Under the earlier decree the trustees have a lien which may be released or discharged only by agreement or by the court.

The decree should be reversed on the law and facts and the matter remitted, or this court under its powers should appoint a referee to carry out the suggestions herein contained.

BREWSTER, J. (dissenting in part): I concur in Presiding Justice Hill's opinion for reversal except as to that part thereof which countenances a construction of the proposed provision in question as constituting "an absolute gift of [for] support and maintenance and not a gift of income with direction that principal may be used in case of need." In my view of the provision in question the testator intended to constitute his wife the sole judge of the amount of the corpus of the estate which might become necessary for her maintenance, comfort and well-being and that as to the expenditure of the amount of corpus so deemed by her to be necessary, she was absolved from an accounting. However, testator did not by so constituting her the sole judge of the matters aforesaid, intend to give her an unlimited power to destroy the trust, but

rather he intended that she would judge of the matters fairly and in good faith and with a due consideration of her existing means for support which he, the testator, had otherwise provided for her including the proceeds of life insurance. In the event of a disagreement between the life beneficiary of the trust and the remaindermen as a result of the former's judgment, in the light of the circumstances and upon the considerations aforesaid, then an issue would be presented for judicial determination.

Heffernan, Foster and Lawrence, JJ., concur in decision; Hill, P. J., dissents in opinion in which Brewster, J., concurs with the modification contained in a memorandum.

Decree affirmed, with costs to respondent payable out of the estate.